(No. 72827.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIE THOMPKINS, Appellant.

*Opinion filed May 26, 1994.—Rehearing denied October 3, 1994.*

Chester T. Kamin, Terri L. Mascherin, Gretchen M. Livingston, Cathryn E. Albrecht, Elizabeth A. Janeway, Steven G. Martin and John F. Dunn, of Jenner & Block, of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Ter-

ence M. Madsen, Assistant Attorney General, of Chicago, and Renee G. Goldfarb and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Willie Thompkins, brings this appeal from an order of the circuit court of Cook County dismissing, without an evidentiary hearing, his petition for post-conviction relief. Because the defendant received the death sentence for the underlying murder convictions, the present appeal lies directly to this court. 134 Ill. 2d R. 651(a).

The defendant was convicted in June 1982 in the circuit court of Cook County of the murders of two men, Gerald Holton and Arthur Sheppard. The defendant was also convicted of a number of other offenses based on the same occurrence. The defendant was sentenced to death for the murder convictions. On appeal, this court affirmed the defendant's convictions and sentences. (*People v. Thompkins* (1988), 121 Ill. 2d 401.) The United States Supreme Court denied the defendant's petition for a writ of *certiorari. Thompkins v. Illinois* (1988), 488 U.S. 871, 102 L. Ed. 2d 156, 109 S. Ct. 187.

Seeking post-conviction relief, the defendant later instituted the present action in the circuit court of Cook County. The defendant's supplemental post-conviction petition alleged 33 separate grounds for relief, and an addendum to the supplemental petition raised one additional point. The State moved to dismiss most of the claims of the petition without an evidentiary hearing, contending that the bulk of the issues raised by the defendant had been determined adversely to him on direct appeal, had been waived, or were without merit; with respect to several of the defendant's claims, however, the State denied the defendant's allegations rather than request their dismissal. Following a hearing on the mo-

tion, the circuit judge dismissed all 34 claims raised by the defendant. The judge found that some of the defendant's issues were barred from reconsideration by principles of *res judicata*, that others had been waived, and that still others lacked merit. The defendant appeals the dismissal of his supplemental post-conviction petition. For the reasons set out below, we affirm in part and reverse in part the judgment of the circuit court and remand the cause to that court for further proceedings.

Our prior opinion in this case fully describes the factual background of the defendant's offenses, and we will repeat those facts only to the extent necessary here. The State's principal witness was Sandra Douglas, who described the occurrence of the offenses and many of the arrangements preceding them. In brief, this testimony showed that on December 22, 1980, the defendant, Ronnie Moore, Pamela Thompkins, and Sandra Douglas were at Pamela's home, in Markham; Pamela is the defendant's sister-in-law. Pamela made a telephone call and at one point stated, "They're here and they have what I told you they would." About 20 minutes later, two men, Holton and Sheppard, arrived at the house, and Pamela escorted them to the basement kitchen, where Moore and Douglas were seated. According to Douglas, Holton placed some cocaine on the table. After part of it was tested, the defendant appeared in the kitchen doorway. He was holding a gun, and he said, "Put—all right put your hands on the table. This is the police." The defendant and Moore then bound Holton and Sheppard with telephone cord.

Around 8 or 9 o'clock that evening, Sandra Douglas heard a banging sound and two gunshots. According to Douglas, Pamela then said, "No, I told them not to do it here. I knew it wouldn't go according to plans." Douglas looked down the basement stairs and saw the feet of a

body being dragged toward the garage. Sheppard, with his hands tied behind his back, then walked by, followed by Moore, who was holding a knife.

Sandra Douglas remained at the house. About 35 minutes later, she received a telephone call from the defendant, who instructed her to "go downstairs and clean up a little bit." She found blood in several areas of the basement and a large pool of blood in the garage. The defendant called again later, asking Sandra to retrieve a handgun from under a couch. The next day, Sandra asked the defendant about the banging sound she had heard. The defendant said that he had hit Sheppard in the head with a shovel when Sheppard refused to get in the trunk of the car. Sandra Douglas later left the Chicago area and lived with relatives in Alabama for several months.

Keith Culbreath also testified at the defendant's trial. Culbreath said that around noon on December 22, 1980, he talked with the defendant at Sandra Douglas' home, in Harvey. According to Culbreath, the defendant asked whether Culbreath wanted to earn some money by committing an armed robbery. Culbreath said that he was interested. Later in the conversation Culbreath said that he wanted to go home to obtain a ski mask to use as a disguise. According to Culbreath, the defendant replied, "Don't worry about it, [I'll] take care of that." Culbreath then said that he did not want to take part in the robbery.

The next day, on December 23, 1980, a Markham police officer found Gerald Holton's body in a ditch alongside a road in an unincorporated area of Markham; the officer found Arthur Sheppard's body nearby. The victims' hands were bound with telephone cord. The cause of death in each case was determined to be a gunshot wound to the head.

The defendant was not arrested until March 17,

1981. At that time, he gave an oral statement to police, admitting his involvement in the offenses but shifting part of the blame for them to Ronnie Moore. At the conclusion of the trial, the defendant was convicted of the murders of Holton and Sheppard and of a number of related felonies. Following a sentencing hearing, the defendant was sentenced to death for the murder convictions.

Codefendant Moore was tried separately, convicted of the murders of Holton and Sheppard, and received a sentence of natural life imprisonment for those offenses. In a separate trial, codefendant Pamela Thompkins was found guilty of conspiracy to commit murder and conspiracy to commit armed robbery and received concurrent four-year sentences. Sandra Douglas was initially charged but was never tried for the offenses involved here.

The Post-Conviction Hearing Act provides an offender with the opportunity to challenge his conviction and sentence for violations of Federal and State constitutional rights. (Ill. Rev. Stat. 1991, ch. 38, pars. 122—1 through 122—7.) A post-conviction proceeding is a collateral proceeding, not an appeal from the underlying conviction. (*People v. Free* (1988), 122 Ill. 2d 367, 377.) "The function of a post-conviction proceeding is not to relitigate the defendant's guilt or innocence but to determine whether he was denied constitutional rights. [Citation.]" (*People v. Shaw* (1971), 49 Ill. 2d 309, 311.) Because of considerations of *res judicata* and waiver, the scope of post-conviction review is limited "to constitutional matters which have not been, and could not have been, previously adjudicated." (*People v. Winsett* (1992), 153 Ill. 2d 335, 346.) Accordingly, issues that were raised in the appeal from the underlying judgment of conviction, or that could have been raised but were not, will not ordinarily be considered in a post-conviction

proceeding. (*People v. Collins* (1992), 153 Ill. 2d 130, 135; *People v. Ruiz* (1989), 132 Ill. 2d 1, 9.) Principles of fundamental fairness, however, will support relaxation of the *res judicata* and waiver doctrines when appropriate. *People v. Neal* (1990), 142 Ill. 2d 140, 146.

This court, in its opinion disposing of the defendant's direct appeal, addressed many of the same issues now being raised by defendant in his post-conviction filings. (*People v. Thompkins* (1988), 121 Ill. 2d 401.) Our prior opinion is *res judicata* with respect to issues that the defendant raised or could have raised on direct appeal from the judgment of conviction. Indeed, in response to a question from the post-conviction judge, defense counsel acknowledged in the proceedings below that only nine of the claims being raised by the defendant were substantial ones based on newly discovered evidence. With respect to the other issues raised in the post-conviction petition, defendant elected to stand on his brief. We fully agree with defendant's implicit acknowledgment that many of the matters raised by the defendant in his post-conviction petition do not involve newly discovered evidence. Rather, many of these claims are essentially a repetition of issues raised by defendant on direct appeal and disposed of by this court on that occasion.

As we have noted, the State, in the proceedings below, sought the dismissal of most, but not all, of the defendant's post-conviction claims. We reject, at the outset, the defendant's suggestion that the State's failure to seek the dismissal of certain portions of the post-conviction petition automatically entitles the defendant to an evidentiary hearing on those particular issues. At the hearing below, the State requested the dismissal of the defendant's petition in its entirety, thus expanding on the relief originally requested. In addition, it is well established that a post-conviction petitioner is not

entitled to an evidentiary hearing as a matter of right. *People v. Titone* (1992), 151 Ill. 2d 19, 24.

The defendant also argues that the post-conviction court erred in dismissing the petition without allowing further discovery or the taking of depositions. The defendant filed a motion to permit further discovery, but the post-conviction judge dismissed the petition without having ruled on the defendant's motion. We agree with the State, however, that the defendant has waived this point by failing to call the motion for a hearing. The defendant filed his original post-conviction petition in July 1990, and he filed the motion for discovery in October of that year. At that time the State asked the post-conviction judge to reserve ruling on the motion until after the voluminous pleadings had been fully reviewed. The post-conviction judge agreed with that procedure. At no time prior to the court's ruling, however, did the defendant call the motion for hearing. Nor did defense counsel mention the motion when the judge announced his ruling in open court, in October 1991. The defendant argues here that the dismissal of the petition would have precluded the post-conviction judge from entertaining the motion at that time, citing *Bettenhausen v. Guenther* (1944), 388 Ill. 487. The case cited, however, involved litigants' voluntary dismissal of a matter and their own subsequent motion seeking leave to withdraw the motion to dismiss, not an adverse judgment against them. See *Johnson v. Sumner* (1988), 172 Ill. App. 3d 70.

The defendant raises numerous issues in the present appeal, and, as we have noted, we considered and rejected a number of the same questions on direct appeal. We will consider the issues presented here in three groups: claims alleging the ineffective assistance of counsel, other claims in support of which the defendant cites new evidence, and claims that are wholly waived.

## I. ASSISTANCE OF COUNSEL

The defendant argues, in claims VI and XV of his supplemental post-conviction petition, that counsel rendered ineffective assistance at trial and at the capital sentencing hearing. The appropriate standard for reviewing these claims is found in the Supreme Court's decision in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. (See *People v. Albanese* (1984), 104 Ill. 2d 504, 526-27 (adopting *Strickland* standard).) *Strickland* states:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

We rejected on direct appeal several allegations of ineffective assistance of counsel at trial. (*Thompkins*, 121 Ill. 2d at 447-48.) The defendant raises different challenges here and cites in support of them evidence that he believes was previously unavailable.

The defendant first argues that trial counsel was ineffective for failing to interview codefendant Pamela Thompkins or to call her as a witness. The defendant notes that Pamela later recanted a statement she had given police in which she implicated the defendant, and the defendant cites the recantation as newly available evidence that warrants consideration of this issue in the

present proceeding. The defendant apparently believes that Pamela would have provided favorable testimony if she had been called as a defense witness.

It is not clear from the record whether trial counsel ever talked to Pamela Thompkins about testifying as a defense witness. In a postscript to a signed recantation of her original statement implicating the defendant, Pamela wrote, "Willie and his attorney asked me would I testify in his behalf and I agreed to do so. Unfortunately it was never presented or brought into court." If defense counsel in fact considered calling Pamela as a witness at trial, then the deference that must be owed to counsel's strategic decisions would insulate this conduct from a charge of ineffective assistance. As *Strickland* explains:

> "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-91, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.

Even if counsel did not seriously consider the prospect of calling Pamela as a defense witness, however, we do not believe that counsel may be faulted for failing to do so. Counsel successfully obtained severance of the defendant's case from Pamela's, knowing that her defense would be antagonistic to the defendant's and that she had made statements implicating herself and the defendant in the offenses involved here. Pamela did not recant her statement until January 1983, more than six months after the conclusion of the defendant's trial

and sentencing hearing. There is nothing in the present record to suggest that counsel would have had any cause to believe that Pamela would recant before that time. Counsel's decision not to pursue this avenue of investigation would have been reasonable under the circumstances shown here.

Finally, we note that the recantation itself was of doubtful utility. It appears as a brief handwritten letter, or note, dated January 26, 1983, and addressed "To whom it may concern." In the document Pamela repudiates her prior statement implicating the defendant in these offenses. Pamela subsequently reaffirmed the content of her original statement, however. At a stipulated bench trial conducted on January 27, 1983, only one day after the purported recantation, Pamela's attorney presented the following stipulation on her behalf:

> "[I]f Pamela were called to testify, she, Pamela, would say that yes, it is true that she did call these two men to come over to the house, and yes, it is true that she did plan some type of narcotics transaction. However, she had no knowledge and had no idea that Willie Thompkins and the other man who was there planned to kill the two people.
>
> She did not participate in those killings; she was shocked and surprised, and that she did not consent to it or agree to it.
>
> Furthermore, she would state that anything she may have done subsequent to the killing of those two men, or anything she did in terms of traveling to and from such point was ordered to do so by Willie Thompkins and the other man, and she did so because she was in fear of her life, if she did not comply.
>
> That she and her children would be killed, and both Thompkins and this other man did so threaten her and order her.
>
> That's what she would testify to."

At the stipulated bench trial, then, Pamela effectively recanted the recantation she had made only one

day earlier. On this record, we agree with the post-conviction judge's assessment that Pamela's recantation of her statement implicating the defendant "cannot be given any substantial weight." Just as we reject here the defendant's contention that counsel was ineffective for failing to call Pamela as a witness at trial, we reject the defendant's separate argument that counsel was ineffective for failing later to call her as a witness at the sentencing hearing.

The defendant next contends that defense counsel was ineffective because he did not investigate two potential alibi witnesses, Tina Pitts and Karen Hayes. In the affidavit the defendant submitted with his post-conviction petition, he states that he was with those two women during the period when other evidence showed that he was meeting with Keith Culbreath prior to the offenses. The defendant believes that Pitts and Hayes therefore could have provided helpful alibi testimony to counter a portion of the prosecution's case. The defendant has failed to submit affidavits from Pitts and Hayes themselves, however, and thus we are precluded from considering this issue further. See *People v. Rial* (1991), 214 Ill. App. 3d 420, 423-24.

The defendant also argues that trial counsel was ineffective for failing to present alibi testimony from Barbara Thompkins, the defendant's wife. In an affidavit submitted with the post-conviction petition, Barbara states that the defendant "must have been home after 9:00 in the evening of December 22, 1980," because that was the time when she would normally leave for work and the defendant drove her to work that night. In her affidavit, however, Barbara acknowledges that defense counsel spoke to her generally about testifying in this case. If Barbara related the possible alibi to defense counsel, then, as *Strickland* instructs, we should defer to counsel's decision not to present her testimony.

The defendant contends further that counsel was ineffective for failing to obtain and to introduce at trial telephone records, since destroyed, that could have established the occurrence of calls between the defendant and Sandra Douglas during the time after the offenses when she was living in Alabama. No evidence shows, however, that counsel failed to obtain the records in question. Counsel initially informed the prosecution that he might introduce telephone records at trial, but counsel later stated that he would not be doing so. It thus appears that counsel investigated the matter and decided against using the records. New evidence presented by the defendant in support of this contention is of no help. Affidavits submitted by the aunt and uncle with whom Sandra Douglas lived in Alabama from December 1980 to March 1981 show only that Sandra received a call from a male caller and that she made telephone calls to unspecified family members in Chicago. Finally, even if records had been available to show the occurrence of calls between Douglas and the defendant, we fail to see how that evidence would have assisted the defendant in meeting the charges involved here.

The defendant also submits that defense counsel was ineffective for failing to visit the crime scene. The defendant asserts that such a visit would have enabled counsel to impeach several points of Douglas' testimony, including her description of Holton's murder and of what she saw from a bedroom window. There is, however, nothing in the record that establishes whether or not counsel made a visit to the crime scene. In any event, we do not believe that the suggested impeachment would have been of any material benefit to the defense.

Finally, the defendant lists nine additional ways in which counsel was allegedly ineffective at trial. The defendant presents these points without the benefit of any

argument or analysis, however, and we decline to consider them here. (See *People v. Dinger* (1990), 136 Ill. 2d 248, 254.) We note, however, that they are matters that could have been raised on direct appeal, and to that extent we must deem them waived.

In claim XV of the post-conviction petition, the defendant argues that he was denied the effective assistance of counsel at his capital sentencing hearing. Because the defendant raised, or could have raised, a number of these contentions on direct appeal, principles of *res judicata* and waiver preclude our consideration of these issues here, as we note elsewhere in this opinion. With respect to one contention raised by defendant, however, we believe that an evidentiary hearing is necessary.

At the capital sentencing hearing, defense counsel presented stipulations regarding certain forensic testimony about the possible origins of the bullets that killed the murder victims. The defendant's only witness at the sentencing hearing was his wife, Barbara Thompkins, who provided favorable testimony concerning the defendant's character and background. In addition, counsel introduced into evidence more than 50 letters in support of the defendant. In argument at the death penalty hearing, counsel contended that the defendant should not be sentenced to death because he had not been clearly identified as the gunman.

The defendant's primary argument here is that defense counsel failed to investigate and present other available mitigating evidence at the sentencing hearing. In his affidavit, the defendant alleges that counsel failed to discuss with him the mitigation phase of the sentencing hearing and failed to ask him about possible witnesses for that portion of the hearing. In support of this contention, the defendant has submitted, with his post-conviction petition, affidavits from a number of

persons, including his parents, siblings, children, and friends. The affiants state that they were not contacted by defense counsel prior to the sentencing hearing and that they would have testified in the defendant's behalf if they had been asked to do so. An affidavit submitted by an attorney who represented the defendant on direct appeal relates that she spoke to trial counsel about this case and that he said that he was familiar with the trial judge and had not expected the judge to impose the death penalty.

The post-conviction judge cited two separate grounds in rejecting this challenge to counsel's effectiveness. First, the judge believed that consideration of this issue was barred by *res judicata*. Second, the judge believed that the testimony now being offered by the defendant largely duplicated evidence introduced at the hearing by counsel in the 56 letters from acquaintances and friends. We do not agree.

The material being submitted by the defendant in support of the present contention was not part of the record in the original proceedings in this case. Rather, the affidavits represent new evidence. Accordingly, we do not believe that the present claim is one that could have been raised on direct appeal. Moreover, the affidavits do not duplicate the letters introduced by defense counsel at the sentencing hearing. As the trial judge found, it appears that many of the letter writers were persons who were writing "in respect to the defendant's parents," and these persons do not appear to have known the defendant particularly well. In contrast, the persons who submitted affidavits in the post-conviction proceeding are the defendant's parents, siblings, children, and friends.

As a constitutional matter, a capital sentencing hearing requires an individualized assessment of the offense and the offender. (*Sumner v. Shuman* (1987), 483

U.S. 66, 73-76, 97 L. Ed. 2d 56, 64-66, 107 S. Ct. 2716, 2721-23; *Woodson v. North Carolina* (1976), 428 U.S. 280, 303-05, 49 L. Ed. 2d 944, 960-61, 96 S. Ct. 2978, 2990-91 (plurality opinion); *People v. Ruiz* (1989), 132 Ill. 2d 1, 25.) Accordingly, the judge or jury in a capital case may not refuse to consider, or be prevented from considering, relevant mitigating evidence offered by the defense. (*Hitchcock v. Dugger* (1987), 481 U.S. 393, 398-99, 95 L. Ed. 2d 347, 353, 107 S. Ct. 1821, 1824; *Eddings v. Oklahoma* (1982), 455 U.S. 104, 110-12, 71 L. Ed. 2d 1, 8-9, 102 S. Ct. 869, 874-75; *Ruiz*, 132 Ill. 2d at 25.) The State contends that counsel's strategy at the sentencing hearing was to argue that the State's evidence depicting the defendant as the gunman was not so convincing that the death penalty was warranted in this case. But the mitigating evidence now being proposed by the defendant would have complemented counsel's strategy. Favorable testimony by the defendant's family members would have fortified counsel's contention that the evidence of the defendant's role in the offenses was subject to doubt and did not justify sentencing the defendant to death.

Out of all the letters submitted at the sentencing hearing, the one selected by the trial judge as the most candid and revealing was one written by a person who had previously served time with the defendant. The author of that letter certainly provided a favorable and sincere portrayal of the defendant; we are not sure, however, that live testimony, whether from that individual or from others who knew the defendant equally well, if not better, would not have provided the sentencing judge with a more complete portrayal of the defendant.

Given the paramount importance of evidence of this nature and the allegations raised in the defendant's post-conviction petition, we believe that it is appropriate

here to remand the matter to the circuit court for an evidentiary hearing on this aspect of the defendant's ineffectiveness claim. See *People v. Ruiz* (1989), 132 Ill. 2d 1, 24-28; *People v. Caballero* (1989), 126 Ill. 2d 248, 273-82.

## II. CLAIMS FOR WHICH THE DEFENDANT PRESENTS NEW EVIDENCE

We consider next other claims in support of which the defendant has submitted new evidence. The defendant argues, in claim I of his supplemental postconviction petition, that the trial court erred in denying his motion to quash the search warrant issued in this case and to suppress the evidence seized in the search. The warrant was issued on March 16, 1981, three days after officers allegedly were contacted by an informant, Doris Ferguson. According to the complaint for the warrant, Ferguson told the investigating officer, Foley, that Pamela Thompkins had asked her for advice about removing bloodstains from the basement floor and that Pamela had gone on to relate the details of the offenses. In an affidavit, Ferguson now denies both that she ever spoke to the police about this case and that Pamela Thompkins ever spoke to her about it. Ferguson had made similar denials in a statement given in 1983 to the defendant's counsel on direct appeal and counsel's investigator, and a copy of the statement she made on that occasion is attached to the affidavit. The defendant maintains that the new evidence presented here establishes that the search warrant was invalid and should not have been issued. The defendant also contends that the period between the time of the offenses and the time Ferguson allegedly spoke with the police was too lengthy to support a finding of probable cause for issuance of the warrant. Doris Ferguson was Pamela Thompkins's mother-in-law; Pamela was married to Ferguson's son, now deceased. In addition, Ferguson has known the defendant since he was a child.

Officer Patrick Foley of the Cook County sheriff's police stated in his warrant affidavit that he received a telephone call during the evening of March 13, 1981, from a woman who said that she had information concerning the murders of Gerald Holton and Arthur Sheppard. The caller arrived at Foley's office, in Markham, a half hour later and identified herself as Doris Ferguson. Ferguson told Foley that on the day the victims' bodies were discovered, December 23, 1980, she had a conversation with Pamela Winfree—Winfree was Pamela's maiden name. Pamela wanted to know how to remove bloodstains from the concrete floors of her garage and basement. In response to Ferguson's questions, Pamela then related to her the details of the offenses. Armed with this information, Foley obtained a warrant for the search of Pamela's residence. In the search Foley seized a handgun, six rounds of ammunition, a length of telephone cord, and samples of what appeared to be bloodstains.

Since that time, Ferguson has denied ever speaking to Officer Foley, and has denied speaking to Pamela about the offenses. The defendant maintains that this new evidence requires a reexamination of the issuance of the search warrant.

In *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, the Supreme Court held that a defendant is entitled to a hearing to challenge the veracity of a warrant affidavit if he makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and if the statement was necessary to the finding of probable cause.

The "substantial preliminary showing" necessary to trigger a *Franks* hearing requires more than a defendant's unsubstantiated denial of the allegations in the

warrant affidavit, but less than proof by a preponderance of the evidence. (*People v. Lucente* (1987), 116 Ill. 2d 133, 151-52.) The decision whether to order a *Franks* hearing "must be based upon a careful balancing of the statements in the warrant affidavit versus those in support of the defendant's challenge to the warrant." *Lucente*, 116 Ill. 2d at 152.

We do not believe that the material contained in Ferguson's affidavit or accompanying statement is sufficient to warrant an evidentiary hearing on the defendant's claim. We recognize, of course, that Ferguson was Officer Foley's principal source of information. Given Ferguson's categorical denials that she ever spoke to Officer Foley, however, the defendant in essence is asserting that Foley invented his conversation with the informant.

Ferguson's denials are entitled to little weight. First, at one point in her statement to defendant's appellate counsel and counsel's investigator, she seemed to allow that she did speak to the police in March 1981:

"Q. Okay, and you never called them or you never came down in[,] well[,] this would be March of '81?

A. Now but you askin[g] me about a search warrant, why would they tell me about it even if I was there, why would they you know say hay [*sic*] Doris I got a search warrant for Pam's house, would they do that?

Q. Well, the only reason I was wondering is whether the day that you did go down there, when they had the subpoena they had told you anything at all about the search warrant?

A. No they did not. No, they didn't mention a search warrant. Really the police didn't tell me anything about a search warrant. Only thing they asked me about blood, did I ever see him before, that's it."

Ferguson's purported conversation with Officer Foley occurred on March 13, 1981. The subpoena referred to in the preceding quotation was issued in May 1982, at the time of the suppression hearing.

In addition, we are unable to see how Officer Foley would have been able to come up with the name of a codefendant's former mother-in-law unless she had spoken to him about the case. As we have noted, Foley stated in the complaint for the warrant that he received a telephone call from a woman who said that she had information about the case. Shortly after that, a woman arrived at Foley's office, identified herself as Doris Ferguson, and related to the officer what she had learned from her daughter-in-law, Pamela Thompkins. Ferguson was not a suspect in the case, and, prior to the date of the conversation, she had not been identified as a possible witness.

Finally, we note that Officer Foley was able to corroborate certain details related by Ferguson. According to Ferguson, Pamela stated that one of the victims said that his wife had just had a child; Foley learned that Sheppard's wife had given birth on October 25, 1980, less than two months before the murders. Ferguson also related that the van the victims were driving had been abandoned at an unspecified motel after the victims were killed; a van registered to Arthur Sheppard was recovered from a motel parking lot in Hazel Crest during the evening of December 23, 1980.

For these reasons, we conclude that the evidence now cited by the defendant does not justify further inquiry into the circumstances of the issuance of the search warrant.

The defendant also contends that the lengthy period of time that elapsed between the occurrence of the offenses and the obtaining of the warrant rendered the warrant stale. We rejected the same contention on direct appeal (*Thompkins*, 121 Ill. 2d at 434-36), and we need not reconsider the issue here.

The defendant next alleges, in claim III of his supplemental post-conviction petition, various instances

of misconduct by the prosecution during trial. The post-conviction judge dismissed this claim in its entirety, but in his order he specifically addressed only parts of this multiple-issue claim. We rejected several of the same contentions on direct appeal; other contentions, though not previously raised, have been waived or lack merit.

The defendant first contends that, during the hearing on the defendant's motion to quash his arrest, the State deliberately concealed from defense counsel the whereabouts of witness Doris Ferguson. We have already discussed Ferguson's affidavit and statement, in which she denies ever having spoken to the police about this case. In this claim, the defendant contends that during the suppression hearing the prosecution kept Ferguson in a room elsewhere in the courthouse and misrepresented her location to counsel.

Contrary to the defendant's argument, it was actually the attorney for codefendant Pamela Thompkins, and not the prosecutor, who provided incorrect information at the suppression hearing about Ferguson's present location. During the hearing, Pamela's attorney stated that he might wish to call Ferguson as a witness. Pamela's attorney continued, "What if Doris Ferguson were to say Pamela Thompkins never told me anything and I never told anything to Foley. Maybe she wouldn't say that, I don't know what she would say. She was here today, but she left. She had to leave." As can be seen, Pamela's attorney, and not the prosecution, provided the information about Ferguson's whereabouts.

The defendant contends further that the prosecution intentionally secreted Ferguson at the courthouse during the day of the suppression hearing. The materials cited by the defendant, however, fail to support this charge. In her affidavit, Ferguson states simply:

"I was not asked to testify at any hearing at the Markham courthouse. Instead, after the police and assistant State's attorneys were finished questioning me at

approximately 10:00 a.m., I was left in the interrogation room until the end of the day. I left only when someone started turning the lights off in the courthouse, and I asked one of the bailiffs to let me out."

The statement given by Ferguson in June 1983 to defendant's counsel on direct appeal likewise fails to bear out the defendant's charge that the prosecution secreted the witness. In the statement, Ferguson says that she was taken to the Markham courthouse by police officers one morning in May 1982, that she spoke there with the prosecutor, and that she stayed in the building until the end of the day, when the lights were extinguished. Ferguson stated:

"Someone told them that they had me back there, I got out, I seen everybody was out, I seen Pam and her father walking out and I hollered to them talked to them."

In her statement, Ferguson also denied that she was told to wait in the room:

"Q. Did they, did they keep you, did you try and leave, did they tell you to wait?

A. No, they didn't tell me anything they left out of the room. I presume I stayed in there. I was so lucky I bought a paper, I read that thing over. I presume coming to tell me something and talk to me. But they did not, I have not heard from nobody since."

These statements do not support the defendant's contention that the prosecution secreted Doris Ferguson at the courthouse.

In his next allegation of prosecutorial misconduct, the defendant argues that the State concealed from the defense the fact that prosecution witness Sandra Douglas had previously made statements about this case to law enforcement authorities in Birmingham, Alabama. The defendant also argues that the State improperly failed to take steps to preserve records of the statements.

This court considered essentially the same issues on direct appeal. (*Thompkins*, 121 Ill. 2d at 422-27.) The court rejected the defendant's contention that the

prosecution's failure to preserve any written statement made by Sandra Douglas in Alabama was a violation of the State's obligation, under Supreme Court Rule 412 (87 Ill. 2d R. 412), to provide the defense with discoverable information.

As this court's earlier opinion explains, a hearing was conducted prior to trial to determine what information, if any, had been preserved by the Birmingham police. (*Thompkins*, 121 Ill. 2d at 424-25.) The court noted the conflicts in the testimony regarding the number of statements made by Douglas, the circumstances under which the statements were given, and the form of the record, if any, that was preserved. It concluded, however, that the evidence showed clearly that the prosecution had acted diligently in attempting to obtain and preserve whatever record the Birmingham police might have made of any statements by Sandra Douglas.

In the proceedings below, the post-conviction judge extended process to defense counsel to permit the defense to determine whether any further evidence could now be discovered in Birmingham. These efforts were fruitless. In addition, defense counsel learned that the duty rosters and telephone logs that could have identified any Birmingham officers with whom Douglas had spoken have since been destroyed. A review of the department's computerized index of the names of defendants, victims, and drivers failed to disclose any references to Douglas, who did not fall within any of those categories. An examination of incident reports made during the relevant time, March 1981, did not reveal any references to Douglas.

The evidence presented by the defendant in the present proceeding does not warrant our revisiting this question. The defendant's allegations that the prosecution initially concealed Douglas' statements assume that statements were in fact made and memorialized. The

defendant's further charges that the State improperly refused to produce Douglas for a year prior to trial and provided misleading information about her then-current location are matters that could have been raised on direct appeal and thus are not proper subjects of the instant post-conviction proceeding.

We next consider the related argument, raised in claim IV of the defendant's supplemental post-conviction petition, that counsel was unable to effectively cross-examine Sandra Douglas because counsel did not have access either to records of Douglas' Alabama statements or to the Birmingham police officers who had taken the statements. At trial, the defendant sought to exclude Douglas' testimony on these grounds, but the judge denied the defendant's motion. In this court's earlier decision, it noted the trial judge's ruling on the defendant's motion. (*Thompkins*, 121 Ill. 2d at 425.) The defendant's concern that the absence of the Alabama material limited his ability to cross-examine the witness could have been raised at that time, on direct appeal.

The defendant presses the further allegation that the trial judge erred in denying a request for a continuance so that a police officer, Sergeant Knight, could be brought from Birmingham to testify. Knight told counsel that he had spoken to Douglas on the telephone and had received information from her concerning the offenses involved here, and counsel wanted to present Knight as a defense witness at trial. The denial of the defendant's request for a continuance is an issue that the defendant could have raised on direct appeal. In any event, we note that the judge, at the pretrial hearing at which this was discussed, suggested that, although he would not delay the beginning of the trial, another accommodation could perhaps be worked out to permit the witness to testify. Defense counsel, however, did not later pursue the matter.

In claim V of his supplemental post-conviction petition, the defendant argues that the trial judge incorrectly denied his motion to suppress an oral statement he gave to police investigators. The defendant argues that admission of the statement violated his fifth amendment right to counsel, his sixth amendment right to counsel, and his fifth amendment right to remain silent. This court on direct appeal rejected all three grounds relied on by the defendant (*Thompkins*, 121 Ill. 2d at 430-34), and the post-conviction judge dismissed this claim as barred by *res judicata*. The defendant maintains, however, that the affidavit he submitted in the post-conviction proceedings supplies fresh evidence that warrants renewed consideration of these questions. As we explain below, the new material cited by the defendant in support of this claim is unavailing.

The defendant contends, in an affidavit he submitted with his post-conviction petition, that the police refused his request to call an attorney, George Howard, and that the officers caused him to enter an interrogation room by saying that his attorney was there waiting for him. These statements are inconsistent, however, with the defendant's own testimony at the suppression hearing. At the hearing, the defendant did not testify that the police refused to permit him to call an attorney. Rather, the defendant stated that he was allowed to telephone his wife, that he then asked her to call attorney Howard, and that he later spoke with Howard when the attorney called the police station. In addition, the defendant did not say that he was lured into the interrogation room. Instead, he said simply that officers came to talk to him while he was already in the room. On direct appeal, this court considered at length the defendant's challenges to his statement. The post-conviction judge correctly determined that further consideration of this claim was barred by *res judicata*.

We turn next to the allegation raised by defendant in the addendum to his supplemental post-conviction petition. In claim XXXIV, the defendant argues that defense counsel improperly denied the defendant his right to testify in his own behalf at trial. The post-conviction judge found this claim to be without merit, concluding that the defendant had acquiesced in this decision to avoid exposing himself to cross-examination.

The defendant maintains that before trial he told defense counsel of his desire to testify in his own behalf. In his affidavit, the defendant states that at one meeting counsel said that he would prepare the defendant and his wife to testify, but counsel never did. The affidavit states further that the defendant "was always under the impression" that he would testify at trial and that the defendant first realized that he would not be called to the witness stand when he heard counsel announce that the defense was resting its case.

We recognize, of course, that the decision whether to take the witness stand and testify in one's own behalf at trial ultimately belongs to the defendant. (*Jones v. Barnes* (1983), 463 U.S. 745, 751, 77 L. Ed. 2d 987, 993, 103 S. Ct. 3308, 3312; *People v. Ramey* (1992), 152 Ill. 2d 41, 54; *People v. Brown* (1973), 54 Ill. 2d 21, 23-24.) The allegations in the defendant's post-conviction pleadings and affidavit, however, show only that the defendant told counsel some time before trial that he wished to take the witness stand in his own behalf. Nothing in the present record demonstrates that the defendant later reaffirmed that intention, and the defendant was silent when counsel rested the case without having called the defendant to the stand. On this record it appears that the defendant acquiesced in counsel's view that the defendant should not testify. As Justice Schaefer explained in *Brown*, another case involving a post-conviction petitioner's claim that trial counsel ignored his stated desire to testify:

"By hypothesis, in every case in which the issue is raised, the lawyer's advice will in retrospect appear to the defendant to have been bad advice, and he will stand to gain if he can succeed in establishing that he did not testify because his lawyer refused to permit him to do so.

Neither in the post-conviction petition in this case, with its reference to conversations which took place between the defendant and his attorney well in advance of the beginning of the trial, nor in the supporting affidavit, is there any statement that the defendant, when the time came for him to testify, told his lawyer that he wanted to do so despite advice to the contrary. In the absence of a contemporaneous assertion by the defendant of his right to testify, the trial judge properly denied an evidentiary hearing." (*Brown*, 54 Ill. 2d at 24.)

*Brown*'s reasoning is equally applicable here. We thus conclude that the post-conviction judge correctly rejected this claim.

The defendant contends, in claim XIV of his supplemental post-conviction petition, that he did not make a valid waiver of his right to a jury for purposes of the sentencing hearing. The defendant argues that the waiver was deficient because he did not realize either that the jury's verdict would have to be unanimous or that the favorable vote of a single juror would preclude imposition of the death penalty.

Assuming the truth of the statements made by the defendant in his affidavit, we do not believe that the waiver was invalid. Before accepting the defendant's waiver, the trial judge reviewed with the defendant the nature of the sentencing hearing and the procedures that would be followed at that stage of the proceedings. In addition, in waiving the right, the defendant acknowledged that he was making the decision "after considerable discussion" with defense counsel.

We have previously declined to rule that a defendant's waiver of jury at a capital sentencing hearing is invalid if the judge fails to inform the defendant either

that the jury's verdict must be unanimous (*People v. Henderson* (1990), 142 Ill. 2d 258, 335; *People v. Evans* (1988), 125 Ill. 2d 50, 89-90) or that the vote of a single juror will be sufficient to preclude imposition of the penalty (*People v. Erickson* (1987), 117 Ill. 2d 271, 295-96; *People v. Madej* (1985), 106 Ill. 2d 201, 220-21). Accordingly, we must reject the defendant's challenge here.

We reject the defendant's related contention that counsel was ineffective for failing to inform him of those requirements. Notably, the defendant has not alleged that he would not have waived a jury if he had been aware of the requirements. See *People v. Ruiz* (1989), 132 Ill. 2d 1, 21.

Finally, the defendant cites the affidavit of his counsel on direct appeal, who states that the defendant's trial attorney did not believe that the trial judge would impose the death penalty—apparently counsel's reason for recommending that the defendant waive a jury. Contrary to the defendant's suggestion, however, we do not believe that the reason cited by trial counsel is an invalid consideration. See *People v. Maxwell* (1992), 148 Ill. 2d 116, 143-44.

In claim XVII, the defendant contends that the trial court erred in admitting, over a defense objection, a written statement purportedly made by Pamela Thompkins. The defendant argues first that admission of the statement was barred by *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. Without reaching the merits of this contention, we note that defendant could have raised the same objection on direct appeal but did not. Trial counsel presented at the sentencing hearing essentially the same argument that the defendant makes now in the present proceeding. Thus, the argument was available to defendant at the time of the direct appeal, and we see no reason to consider the question at this late date.

The defendant argues further, however, that Pamela Thompkins later recanted her 1981 statement, and that the recantation renders her original statement unreliable. As we have stated, Pamela's recantation consists of a brief note, or letter, she wrote on January 26, 1983. The next day, however, Pamela testified, by way of stipulation, in a manner inconsistent with the recantation. As we concluded earlier, Pamela's recantation is entitled to little weight. For similar reasons, we must reject the defendant's additional contention that Pamela's original statement was demonstrably false and that the authorities coerced it from her.

The defendant argues, in claim XIX of his supplemental post-conviction petition, that the trial judge relied on a false nonstatutory aggravating circumstance in deciding to impose the death penalty in the present case. This issue involves the evidence of the defendant's convictions for the attempted murder and aggravated battery of Michael Weaver in 1971. The defendant asserts that the prosecution falsely suggested to the court that the defendant had murdered Weaver; the defendant further maintains that the trial judge relied on that misconception in sentencing the defendant to death. The post-conviction judge found this claim to be meritless. This court, in its earlier opinion, rejected the defendant's challenges to the timing of this testimony and the sequence of the State's proof. (*Thompkins*, 121 Ill. 2d at 448-50, 453.) As we explain below, the defendant's new allegations and new evidence fare no better.

At the defendant's sentencing hearing, the State presented the testimony of Robert Beranek, one of the assistant State's Attorneys who had prosecuted the defendant in the Weaver case. According to Beranek, the defendant and other members of a street gang suspected that Weaver was informing the police about the gang's activities. One night the defendant and several other

persons escorted Weaver to a certain location. There the defendant kissed Weaver on both cheeks and then shot him three or four times, leaving him for dead. Weaver survived, however, and testified at the defendant's subsequent trial, in which the defendant was convicted of attempted murder and aggravated battery; the defendant received an indeterminate sentence of 15 to 20 years' imprisonment for the offenses.

At the sentencing hearing conducted in the present case, the State asked Beranek if he knew Weaver's present whereabouts, and the witness stated that Weaver was deceased. Later, in argument at the sentencing hearing, the prosecutor referred to the Weaver offenses, and the trial judge mentioned them in explaining his decision to sentence the defendant to death. The defendant contends that the State inaccurately suggested that the defendant was guilty of murdering Weaver and that the trial judge apparently believed that to be true. With his post-conviction petition the defendant submitted copies of Weaver's death certificate and autopsy report, showing that Weaver died of natural causes—bronchial pneumonia—in Detroit in September 1972. The defendant argues that this evidence is new evidence, removing the present claim from the bar of *res judicata* and entitling him to an evidentiary hearing on its merits. We do not agree.

We find no validity to the defendant's twin assertions that the prosecutor improperly suggested that the defendant was responsible for Weaver's death or that the trial judge incorrectly believed that to be the case. In argument at the sentencing hearing, the prosecutor simply described the factual background of the earlier offenses:

> "Willie Thompkin[s] took an active part in the questioning of the unfortunate young man, who has since died, and then as Mr. Beranek described it, Mr. Thompkins kissed the young man once on each cheek, stepped back and fired

several times into his body at virtually point blank range, then leaving him for dead."

In discussing the defendant's criminal history, the trial judge stated:

"He was sentenced in 1971 by the Honorable Richard Fitzgerald to serve fifteen to twenty years on a charge of attempt murder. Paroled in 1975. The record here disclosed to state the factual situation briefly, that the decedent in the 1971 case was kissed on both side of the cheek I believe, and assassinated, or shot. That's the primary and essential element of significant history."

As the preceding quotations demonstrate, the prosecutor did not suggest that the defendant was responsible for Weaver's death, and the trial judge properly characterized the defendant's former offense as attempted murder rather than murder. Although the trial judge at one point stated that the defendant had "assassinated" Weaver, the judge quickly corrected himself. For these reasons, we must reject the defendant's arguments that the State presented false evidence regarding the defendant's earlier offenses and that the trial judge mistakenly relied on that evidence in deciding to impose the death penalty. Because no mistake of that nature occurred in the underlying proceedings, we do not believe that an evidentiary hearing on this issue is made necessary by the new evidence offered by the defendant—Weaver's death certificate and the autopsy report, showing Weaver's death from natural causes in Michigan in 1972. Moreover, in light of our conclusion that the State did not present inaccurate information regarding the defendant's prior convictions, we must reject the defendant's related contentions that counsel was ineffective in failing to respond to this testimony, and that the prosecution was guilty of misconduct in its manner of presenting testimony about Weaver's death.

The defendant next argues, in claim XX of the petition, that the prosecution did not present sufficient proof

of his intent to kill the victims in this case, Holton and Sheppard. The defendant's eligibility for the death penalty was premised on the "multiple murderer" aggravating circumstance contained in section 9—1(b)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(3)). That provision requires that each of the murders have been performed with intent or premeditation. This court rejected a similar contention in the defendant's direct appeal, and, in light of our earlier disposition, we agree with the post-conviction judge that consideration of the same issue here is barred by *res judicata*.

Discussing this question on direct appeal, this court stated:

> "Even though defendant may have not been the actual shooter, the evidence shows, at the very least, that he planned and actively participated in the armed robbery, murder, and the subsequent concealment thereof. Although there may be no direct evidence establishing that it was in fact the defendant who shot the victims, we believe the proof adduced at trial is sufficient to sustain defendant's conviction and sentence under the principle of accountability." *Thompkins*, 121 Ill. 2d at 452.

This court also rejected the further contention raised here that the jury's verdict at trial might have rested simply on the finding that the defendant was guilty of felony murder, and that such a finding would have been inconsistent with the sentencing judge's later determination, made under section 9—1(b)(3), that the murders were committed with intent or premeditation.

The jury at the defendant's trial received instructions on alternative theories of murder, including felony murder, and used a general verdict form to record its finding of guilt. On direct appeal this court rejected the defendant's contention that the trial judge's eligibility determination was not supported by the jury's general verdict. After citing the general rule that when " 'an indictment contains several counts arising out of a

single transaction, and a general verdict is returned the effect is that the defendant is guilty as charged in each count' " (*Thompkins*, 121 Ill. 2d at 455-56, quoting *People v. Lymore* (1962), 25 Ill. 2d 305, 308), this court stated:

"Applying the above rule, we conclude that the jury's return of general verdicts raises a presumption that it found defendant guilty of intentionally murdering Holton and Sheppard. Furthermore, the return of general verdicts does not preclude the imposition of the death penalty. [Citation.]" *Thompkins*, 121 Ill. 2d at 456.

The defendant urges, however, that newly available evidence warrants our reexamination of this issue. The defendant submits that testimony presented at the separate trial of codefendant Ronnie Moore, conducted in 1986, establishes that the defendant was not the primary actor in the present offenses, and that Moore's role was more significant than was indicated by the evidence presented at the defendant's trial. The defendant included the transcript of Moore's trial and sentencing hearing as an exhibit to the present post-conviction petition.

We do not agree with the defendant that the evidence introduced at Moore's trial requires that we modify this court's previous determinations. Although the testimony presented at Moore's trial provides a more complete picture of Moore's participation in these offenses, that evidence does not detract from the earlier depiction at the defendant's trial of the defendant's own involvement in the crimes. Accordingly, we do not believe that the newly available evidence cited by the defendant—the transcript of Moore's trial—warrants the holding of an evidentiary hearing on this claim.

The defendant also argues, in claim XXI of the petition, that the death sentence imposed against him is disproportionately harsh in comparison with the sentence of natural life imprisonment received by Moore for the same offenses. In support of this claim, the de-

fendant again cites the record of Moore's trial. In 1986, in a bench proceeding before a different judge, Moore was convicted of the murders of Holton and Sheppard. The State sought the death penalty, but the court sentenced Moore to a term of natural life imprisonment instead. The judge explained that he was imposing the less severe sanction because he had found Moore guilty of the murders on an accountability theory and because Moore's only prior offense was a conviction in 1972 for robbery. The defendant contends here that his own sentence of death is unconstitutionally disproportionate to Moore's sentence of natural life imprisonment. The post-conviction judge concluded that this argument was without merit. We agree.

Contrary to the defendant's view, the evidence presented at the defendant's and Moore's separate trials does not demonstrate either that Moore was the more culpable offender or that he possessed less rehabilitative potential. According to the testimony, the defendant exercised the dominant role in planning the offenses, and he was an active participant in the crimes. The defendant initially instructed Pamela Thompkins to arrange a drug deal with Gerald Holton. The defendant later tried to enlist Keith Culbreath's assistance in the plan. It was the defendant who broke up the staged drug transaction by appearing suddenly and announcing that he was a police officer. Pamela Thompkins later heard the defendant order the two victims to lie on the floor, and the defendant stood guard over the victims after he directed Sandra Douglas to accompany Ronnie Moore to buy grain alcohol. Pamela also saw blood on the defendant's clothing. Following the commission of the murders, it was the defendant who called Sandra Douglas and ordered her to clean up the crime scene, and he called again later to instruct her to retrieve a gun he had left there. We have already rejected, as unreliable,

Pamela's recantation of her testimony at the defendant's trial.

The evidence also shows that the defendant had a more serious criminal history and less rehabilitative potential. The defendant had been convicted in 1971 of attempted murder and aggravated battery and sentenced to 15 to 20 years' imprisonment; in contrast, Moore's only prior offense was a 1972 conviction for robbery, for which he received an indeterminate sentence of five years to five years and a day.

Compared with Moore, the defendant was the more culpable offender and, as measured by his criminal record, had less rehabilitative potential. For these reasons, we conclude that the defendant's death sentence is not unconstitutionally disproportionate to Moore's sentence of natural life imprisonment. See *People v. Strickland* (1992), 154 Ill. 2d 489, 535-38; *People v. Flores* (1992), 153 Ill. 2d 264, 293-97.

### III. CLAIMS WHOLLY WAIVED

We now turn to the final group of claims raised by the defendant. These are all issues that were presented or could have been presented on direct appeal and therefore are wholly waived. We will consider these contentions in the sequence in which they appear in the defendant's supplemental post-conviction petition.

The defendant argues, in claim II of the petition, that the prosecutor interfered with the defendant's selection of counsel. The defendant argues that, prior to trial, the prosecutor improperly contacted an attorney, George Howard, whom the defendant was then attempting to retain, and persuaded Howard not to take the defendant's case. This question came up during a status hearing, shortly before the beginning of trial, when the defendant mentioned his efforts to obtain different counsel. One of the prosecutors then said that he had spoken on the telephone to Howard's secretary and had

told her that the defendant had deposited cash bail in the amount of $10,000, that the trial court would seek to apply the sum remaining after the 10% deduction toward the reimbursement of defendant's appointed counsel, and, finally, that the prosecutor did not believe that much, if any, would remain for the payment of new counsel. Howard did not represent the defendant in these proceedings.

The post-conviction judge correctly dismissed this claim on grounds of *res judicata*. This court rejected the same contention on direct appeal, finding no impropriety in the prosecutor's actions. This court concluded then that the prosecutor did not interfere with the defendant's right to select counsel. (*Thompkins*, 121 Ill. 2d at 436-38.) In light of this court's original holding on this issue, principles of *res judicata* preclude our considering the same issue again here.

The defendant argues, however, that *res judicata* does not bar the present claim because trial counsel, whom defendant was seeking to replace with Howard, proved to be ineffective. We do not agree with the defendant that trial counsel's performance has any bearing on this issue. As the State observes, the defendant's right to select counsel is distinct from his right to the effective assistance of counsel; having found no interference with the defendant's selection of counsel, we do not believe that counsel's performance at trial is relevant in this regard. Finally, we must reject, as waived, the defendant's further contention that the prosecutor's conduct concerning the bond money improperly interfered with assets belonging to the defendant.

We consider next several allegations of prosecutorial misconduct that are not disposed of elsewhere in the present opinion. In his final series of allegations in claim III, the defendant contends that the prosecution made a number of improper comments in opening

statement and closing argument. This court rejected several of these contentions on direct appeal. Other points not previously raised could have been raised, and we decline to review them here.

Briefly, the defendant contends that the prosecution argued certain facts not in evidence, erroneously commented that Sandra Douglas' trial testimony was consistent with her statement to Alabama authorities (see *Thompkins*, 121 Ill. 2d at 429-30), improperly suggested the existence of other evidence of defendant's guilt (see *Thompkins*, 121 Ill. 2d at 444-45), improperly suggested that the defendant was dangerous, speculated with regard to the defendant's motive in making his statement to the police and bolstered the credibility of the officer who testified to the statement, and improperly argued that the defendant had the burden of producing a certain witness. These allegations of trial error were raised or could have been raised on direct appeal, and there is no need for us to consider them here.

The defendant argues, in claim VII of his supplemental post-conviction petition, that the trial judge incorrectly explained to the prospective jurors the defendant's constitutional right not to testify. The trial judge told the prospective jurors that "the Fifth Amendment says the defendant need not testify, need not incriminate himself." The defendant argues that the judge's comment improperly suggested that any testimony from the defendant would be self-incriminatory. The post-conviction judge dismissed this claim on grounds of *res judicata*, but the defendant insists that fundamental fairness warrants consideration of this issue.

On direct appeal, this court rejected the defendant's challenge to the remark quoted above, concluding from a review of the record as a whole that the statement "did not constitute an adverse comment on defendant's failure to testify." (*Thompkins*, 121 Ill. 2d at 439.) In

explaining its holding, the court quoted a portion of the judge's remarks to the prospective jurors at the beginning of *voir dire*; at that time, the judge told the venire:

> "So when and if a defendant charged elects to remain silent, he puts a legal burden on the Court to determine whether, at some point, the State has established the charge against him beyond a reasonable doubt."

The defendant now argues that this separate comment by the judge improperly suggested that the State's burden of proof would arise only if the defendant chose not to testify at trial.

Clearly, the defendant's challenge to this remark comes too late. The defendant could have raised the same issue on direct appeal but failed to do so. We do not agree with the defendant that considerations of fundamental fairness warrant further review of this question here.

In claim VIII, the defendant argues that certain comments made by the trial judge during *voir dire* erroneously suggested to the jury that a capital sentencing hearing was certain to occur in this case. In explaining the course of procedures for trial and sentencing, the judge stated:

> "The first thing, of course, that must be accomplished in the trial is the production of the testimony by the State in support of its indictment, and then the election by the defendant, whether he thinks he has to testify against it, or if he wants to, and at that point, then, Step One in the process will be pretty close to accomplishment and that is the question of whether the case has been proven.
>
> So before you get into the question of capital punishment, there must first be a finding of guilty of murder and that's the only thing which capital punishment can be predicated upon.
>
> All of this means that your Jury services [*sic*] is going to be performed in certain segments."

The defendant now argues that the prospective jurors would have understood the preceding comments

to mean that a capital sentencing hearing was bound to be held and that the trial was merely a formality leading up to the sentencing hearing.

The defendant did not raise this argument on direct appeal from his conviction and sentence, and therefore we consider it waived. In any event, we note that the post-conviction judge considered and rejected this argument on the merits, concluding that the trial judge's comments did not go beyond what was necessary to properly qualify the jury under *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, and its progeny. We would agree.

The balance of the trial judge's remarks clarified the comments quoted above. The judge continued his explanation of trial and sentencing procedures by stating:

> "First the trial of the primary charge, and then—and the other charges, and then assuming—and I have no right to assume anything *** but assume for the moment that you were satisfied that the State proved the case and you returned a verdict of murder, then there would be separate hearing and you would continue as the jury."

The trial judge went on to refer to the return of a guilty verdict as a prerequisite for the holding of a sentencing hearing. Viewing the trial judge's comments in their entirety, we do not believe that the jurors would have been confused about the true purpose of the trial or about the conditional nature of the prospective sentencing hearing.

The defendant next contends, in claim IX of his supplemental post-conviction petition, that the trial judge improperly allowed prosecution witness Sandra Douglas to testify regarding hearsay statements made by Pamela Thompkins. This court rejected the same argument on direct appeal, concluding then that the statements in question constituted spontaneous declarations and were therefore admissible under that excep-

tion to the hearsay rule. (*Thompkins*, 121 Ill. 2d at 427-29.) In light of this earlier disposition, the post-conviction judge correctly declined to consider this question on grounds of *res judicata*, and we need not address this issue again. We must reject the defendant's contention that further review is warranted here because the court was not called upon to consider, in its earlier opinion, his theory that the hearsay testimony was inadmissible because Pamela was not shown to be unavailable to testify. Contrary to the defendant's view, unavailability of the declarant is not a prerequisite for the admission of a spontaneous utterance. *White v. Illinois* (1992), 502 U.S. 346, 353-58, 116 L. Ed. 2d 848, 857-60, 112 S. Ct. 736, 741-43.

The defendant complains, in claim X of his supplemental post-conviction petition, that the trial judge improperly restricted defense counsel's cross-examination of prosecution witness Keith Culbreath, denying the defendant his sixth amendment right of confrontation. (See *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105.) At trial, defense counsel attempted to ask Culbreath whether the prosecution had charged Culbreath with a drug offense to coerce him to testify against the defendant. The trial judged refused to permit the inquiry. On cross-examination, Culbreath explained that the pending charge against him was to be dropped in exchange for his truthful testimony in the defendant's case, that he would later be relocated, and that he was being held in protective custody in the meantime.

This court rejected on direct appeal the defendant's challenge to the trial judge's ruling. This court found that the information elicited from Culbreath in his testimony sufficiently showed his potential bias in the case, and it concluded that any error in limiting counsel's inquiry was harmless beyond a reasonable

doubt. (*Thompkins*, 121 Ill. 2d at 441-42.) Given this earlier holding, we must conclude here, as the post-conviction judge did, that reconsideration of this issue is barred by *res judicata*.

We consider next the defendant's related contention that the prosecution committed misconduct by coercing Culbreath into testifying in behalf of the State. Following the judge's ruling limiting the defendant's cross-examination, defense counsel informed the court that he had been told by Culbreath's attorney that Culbreath had been arrested and charged with the offense of unlawful delivery of cocaine to induce him to testify against the defendant. The defendant challenges here the prosecution's actions with respect to Culbreath, as disclosed in counsel's statement to the trial court.

This was an issue that could have been presented on direct appeal but was not. In its earlier opinion, this court discussed two separate questions concerning Culbreath's testimony. (*Thompkins*, 121 Ill. 2d at 441-44.) The defendant could have raised the related allegation made here, that the prosecution improperly charged Culbreath with an offense to gain his cooperation and his testimony. The defendant has offered no new evidence in support of this allegation, and we decline to consider it here.

In claim XI of the petition, the defendant argues that the trial judge erred in refusing a defense-tendered instruction on the credibility of a habitual user of illicit drugs. The court rejected the same argument on the defendant's direct appeal, concluding then that there was insufficient evidence to support the defendant's charge that prosecution witness Sandra Douglas was an addict. (*Thompkins*, 121 Ill. 2d at 440-42.) As the post-conviction judge determined, this earlier holding bars reconsideration of the same issue here. The evidence of Douglas' occasional drug use cited by the defendant was

part of the trial record and thus was known to this court when it upheld the trial judge's ruling. Moreover, issues concerning jury instructions are generally not cognizable in a post-conviction proceeding. *People v. Goerger* (1972), 52 Ill. 2d 403, 406.

The defendant, in claim XII of his petition, argues that the trial judge erred in denying the defendant's motion *in limine* that sought to preclude the State from using the defendant's prior convictions for impeachment purposes. Before trial, defense counsel filed a motion to prevent the prosecution from impeaching the defendant with evidence of two prior convictions. The defendant was convicted of attempted murder and aggravated battery in 1971, received a sentence of 15 to 20 years' imprisonment, and was released from prison in 1975. The defendant was tried on the charges involved in the present case in 1982. The defendant now contends that the trial court's unfavorable ruling on the motion *in limine* induced him not to testify at trial. The post-conviction judge rejected this claim as meritless, concluding that the trial judge's ruling was not an abuse of discretion.

The same argument could have been raised on direct appeal, and therefore it may not properly be considered here. Moreover, we note that the defendant's failure to testify at trial means that the issue would have been waived even on direct appeal. (*Luce v. United States* (1984), 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460; *People v. Miles* (1989), 186 Ill. App. 3d 370, 372-73; *People v. Redman* (1986), 141 Ill. App. 3d 691, 699-700; see *People v. Whitehead* (1987), 116 Ill. 2d 425, 444.) For these reasons, we decline to address this issue here.

The defendant argues, in claim XIII of the petition, that the trial judge erred in permitting the prosecution to present evidence that one of the murder victims, Arthur Sheppard, was survived by a child. The defendant

contends that the testimony denied him his right to a fair trial.

This information was introduced during the testimony of the victim's wife, Lynetta Sheppard, who appeared as a "life and death" witness at the defendant's trial. The court rejected an identical argument on direct appeal, holding then that this isolated reference to the victim's surviving family members could not have been prejudicial. (*Thompkins*, 121 Ill. 2d at 446-47.) Again, this court's original holding on this question makes reconsideration of the issue unnecessary here, and the post-conviction judge correctly gave *res judicata* effect to the prior ruling.

In claim XIV, the defendant contends that the trial judge erred in his handling of a question submitted to the court by the jury while it was deliberating. During deliberations, the jury sent the judge a note asking, "May we get a copy of the transcript?" After discussing the matter with the parties, the judge informed the jury in a written response that a transcript would not be available for several days and asked whether the jury had a question about any particular testimony. The jury then returned a note indicating that it did not have any further questions. Although the judge's handling of this question was consistent with the wishes of the defendant's trial attorney, the defendant now argues that the judge failed to exercise his discretion in responding to the jury's request because he did not ask the jury what particular testimony it wanted.

This was an issue that the defendant could have raised on direct appeal, and thus it falls outside the proper scope of the present proceeding. But even if we considered the question we would conclude, as did the judge below, that it lacks merit. We fail to see in what way the trial judge's actions here represented a failure to exercise discretion, as the defendant charges. The

trial judge accurately explained to the jury that a transcript was not then available and specifically asked whether the jurors wished to receive any particular portion of the trial testimony. The jury thus was provided with an opportunity to request any further information it might have wished to receive.

The defendant next raises, in claim XVIII, allegations of prosecutorial misconduct at the sentencing hearing. We discuss several of these issues elsewhere in this opinion. The defendant's remaining contention is that the prosecutor made false and negative insinuations about the defendant's character during cross-examination of the defendant's wife at the sentencing hearing. This court rejected the same contention in the defendant's direct appeal, however, and accordingly we need not consider this issue further. *Thompkins*, 121 Ill. 2d at 453-54.

The defendant also argues, in claim XXXIII of the post-conviction petition, that the bail statute invoked by the trial judge in the present case cannot be applied to him without violating the *ex post facto* proscriptions of the Federal and State Constitutions. U.S. Const., art. I, § 10; Ill. Const. 1970, art. I, § 16.

Pursuant to section 113—3.1 of the Code of Criminal Procedure of 1963, the trial judge ordered the statutory maximum of $5,000 of the defendant's $10,000 cash bond to be sequestered and applied toward the reimbursement of the defendant's appointed counsel. The statute did not take effect until July 1, 1982, the date when the trial judge sentenced the defendant. The defendant argues that applying the provision to his case violates the *ex post facto* prohibitions of the Federal and State Constitutions because the new statute disadvantages him retrospectively. See generally *Miller v. Florida* (1987), 482 U.S. 423, 96 L. Ed. 2d 351, 107 S. Ct. 2446; *Tiller v. Klincar* (1990), 138 Ill. 2d 1.

The defendant presented a related contention on direct appeal. On that occasion, the defendant argued that the trial judge's statement, earlier in the proceedings, that the judge was authorized to apply a portion of the defendant's cash bond to reimbursing the cost of appointed counsel had caused the defendant to forgo attempting to retain counsel because he mistakenly believed that he would then have no funds left. This court rejected the defendant's contention, noting that the trial judge's statement was equivocal and, moreover, that the defendant had persisted in his efforts to retain counsel even after the trial judge made the comment in question. (*Thompkins*, 121 Ill. 2d at 437.) Clearly, the defendant could have raised on direct appeal the argument he now asserts. This court's prior decision is, therefore, *res judicata* with respect to this claim.

In a final series of arguments, raised as claims XXII through XXXII of the supplemental post-conviction petition, the defendant contends that various features of the Illinois death penalty statute, section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1), violate the Federal and State Constitutions. We have repeatedly rejected the same contentions, as the post-conviction judge observed, and we see no reason to reach a different result here.

This court has held that the statutory language does not effectively prevent the sentencer from giving meaningful consideration to a defendant's mitigating evidence. (*People v. Page* (1993), 155 Ill. 2d 232, 283; *People v. Strickland* (1992), 154 Ill. 2d 489, 538-39.) The statute does not place on a defendant the risk of nonpersuasion at the sentencing hearing (*People v. Fields* (1990), 135 Ill. 2d 18, 76; *Thompkins*, 121 Ill. 2d at 456; *People v. Orange* (1988), 121 Ill. 2d 364, 390; *People v. Caballero* (1984), 102 Ill. 2d 23, 49), nor is it invalid for failing to require the State to carry a burden of persua-

sion at the second stage of the hearing (*People v. Jones* (1988), 123 Ill. 2d 387, 426; *Thompkins*, 121 Ill. 2d at 456-57; *People v. Eddmonds* (1984), 101 Ill. 2d 44, 68; *People v. Free* (1983), 94 Ill. 2d 378, 421). The statute is not invalid for failing to require the State to provide the defendant with pretrial notice of its intent to seek the death penalty (*Thompkins*, 121 Ill. 2d at 456; *People v. Silagy* (1984), 101 Ill. 2d 147, 161-62; *People v. Gaines* (1981), 88 Ill. 2d 342, 369) or of the evidence in aggravation that will be introduced at the capital sentencing hearing (*People v. King* (1986), 109 Ill. 2d 514, 547; *People v. Albanese* (1984), 104 Ill. 2d 504, 540; *Gaines*, 88 Ill. 2d at 369).

The discretion afforded by the statute to the prosecutor in deciding whether to seek the death penalty in a particular case does not result in its arbitrary or capricious imposition (*People v. Williams* (1991), 147 Ill. 2d 173, 264-66; *Thompkins*, 121 Ill. 2d at 456; *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 539-43), nor does it violate separation of powers principles by vesting a judicial function in a nonjudicial officer (*People v. Franklin* (1990), 135 Ill. 2d 78, 119-20; *People v. Lewis* (1981), 88 Ill. 2d 129, 146; *People ex rel. Carey*, 77 Ill. 2d at 535-39). The statute is not invalid for failing to require the sentencing authority to make a separate determination that death is the appropriate punishment in the case. (*People v. Whitehead* (1987), 116 Ill. 2d 425, 462; *People v. Montgomery* (1986), 112 Ill. 2d 517, 534; *People v. Stewart* (1984), 105 Ill. 2d 22, 76-77.) Nor is the statute invalid for failing to require the sentencing authority to provide a written statement of its findings. *People v. King* (1986), 109 Ill. 2d 514, 550-51; *People v. Stewart* (1984), 104 Ill. 2d 463, 497; *People v. Brownell* (1980), 79 Ill. 2d 508, 541-44.

The defendant also argues that the death penalty statute is unconstitutionally vague in its references to

the aggravating and mitigating circumstances that may be presented by the parties and considered by the sentencer. In support of this contention the defendant cites the district court decision in *United States ex rel. Free v. Peters* (N.D. Ill. 1992), 806 F. Supp. 705. The Seventh Circuit Court of Appeals, however, has rejected the district court's reasoning (*Gacy v. Welborn* (7th Cir. 1993), 994 F.2d 305) and has reversed the district court's decision (*Free v. Peters* (7th Cir. 1993), 12 F.3d 700). We agree with the appeals court, and we accordingly reject the defendant's contention here. *People v. Fair* (1994), 159 Ill. 2d 51.

This court has previously rejected the defendant's argument that the death penalty statute has been applied in a discriminatory manner against particular defendants who have chosen to exercise their constitutional right to trial (*People v. Richardson* (1988), 123 Ill. 2d 322, 358; *People v. Lewis* (1981), 88 Ill. 2d 129, 148-49), and the present defendant offers no reason to reach a different conclusion in this case. The court has also rejected the contention that the statute is unconstitutionally applied to discriminate on the basis of the offender's or victim's race. (*People v. Kokoraleis* (1989), 132 Ill. 2d 235, 291-92; *People v. Orange* (1988), 121 Ill. 2d 364, 392; *People v. Davis* (1987), 119 Ill. App. 3d 61, 64-68; see *McCleskey v. Kemp* (1987), 481 U.S. 279, 95 L. Ed. 2d 262, 107 S. Ct. 1756.) The defendant does not elaborate on his additional assertions that the death penalty statute has been applied in a discriminatory fashion on the basis of sex and poverty, and we need not consider those claims here.

The defendant also contends that the death penalty statute is applied arbitrarily and capriciously. The defendant again cites studies that purport to show that the death penalty is applied in a discriminatory manner. The defendant also insists that there is no rational way

to distinguish the few cases in which the death penalty is imposed from the many cases in which it is not. This court has already rejected the defendant's contention that the statute has been unconstitutionally applied in a discriminatory manner. We must reject the defendant's further argument that cases in which the sentence is imposed are not rationally distinguishable from those in which the sentence is not imposed. The court has, however, rejected the contention that the statute is invalid for its failure to provide for comparative proportionality review of all death sentences. *People v. King* (1986), 109 Ill. 2d 514, 551; *People v. Stewart* (1984), 104 Ill. 2d 463, 499; *People v. Brownell* (1980), 79 Ill. 2d 508, 541-44.

For the reasons stated, we reverse that portion of the judgment of the circuit court of Cook County dismissing, without an evidentiary hearing, the defendant's contention in claim XV that he was denied the effective assistance of counsel because counsel failed to adequately investigate and present evidence in mitigation. In all other respects, however, we affirm the judgment of the circuit court. We remand the present cause to the circuit court of Cook County for the limited purpose of conducting an evidentiary hearing on the specified portion of the defendant's supplemental post-conviction petition.

*Judgment affirmed in part*
*and reversed in part;*
*cause remanded.*