(No. 72667.—)

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PAUL S. ERICKSON, Appellant.

*Opinion filed July 28, 1994.—Rehearing denied October 3, 1994.*

.

84

McMORROW, J., joined by HARRISON, J., dissenting.

Rita A. Fry, Public Defender (Kyle Wesendorf, Assistant Public Defender, of counsel), and Christina M. Tchen and Rawn Howard Reinhard, all of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Kenneth McCurry and Michael Golden, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

After waiving the jury that had convicted him, defendant was sentenced to death for raping Elizabeth Launer, murdering her, and concealing the homicide. This court affirmed the convictions and sentence on direct appeal. (*People v. Erickson* (1987), 117 Ill. 2d 271.) After the United States Supreme Court declined review (*Erickson v. Illinois* (1988), 486 U.S. 1017, 100 L. Ed. 2d 216, 108 S. Ct. 1754), defendant pursued, unsuccessfully, post-conviction relief (Ill. Rev. Stat. 1989, ch. 38, par. 122—1) in the circuit court of Cook County. Defendant appeals the dismissal of his petition for that relief (134 Ill. 2d R. 651(a)), seeking, alternatively, remand for an evidentiary hearing on it or a new sentencing hearing.

We affirm.

As this court's earlier opinion summarizes the circumstances of the convictions and sentence, only the facts necessary to understand the issues raised are noted.

### THE TESTIMONY OF JOHN WELICZKO

After learning of the charges against their son, defendant's parents sought out, for themselves, the professional counseling services of John Weliczko. (See *Erickson*, 117 Ill. 2d at 285.) Weliczko eventually extended his services to the defense, testifying as the sole witness on defendant's behalf during the sentencing phase of the trial.

It was intended that Weliczko would give his opinion as a mental health expert that a psychological condition explained defendant's criminal behavior. (See Ill. Rev. Stat. 1989, ch. 38, par. 9—1(c)(2); *Erickson*, 117 Ill. 2d at 285, 301.) Weliczko did testify as to what might have accounted for defendant's acts. But he did so as a lay person, the trial judge having refused to qualify him as an expert. See *Erickson*, 117 Ill. 2d at 285, 301.

There was good reason for this. In relating his credentials, Weliczko had stated that he held a master's degree in psychology from Harvard University and a doctorate in the field from the University of Chicago. Weliczko, in fact, was not trained in psychology.

Cross-examined about his background, Weliczko admitted the Harvard master's degree was in theology. As for the doctorate, it was a ministry degree in pastoral counseling and psychology. Further, the degree-granting institution was not the University of Chicago but the Chicago Theological Seminary, an entity affiliated with the university.

Weliczko did manage to offer that he practiced psychotherapy, and, therefore, was, like a licensed psychologist, recognized to be a mental health care provider. He stated that, like a psychologist, a psychotherapist could evaluate a person and arrive at "somewhat the same conclusions" about the person's mental health. For those reasons, it appears, the trial judge considered Weliczko's opinion, albeit as a lay person, and accepted into evidence his written "psychological" evaluation of defendant. See *Erickson*, 117 Ill. 2d at 301.

Defendant now complains Weliczko's testimony denied him a fair death penalty hearing. He cites guarantees of the sixth, eighth, and fourteenth amendments of the United States Constitution (U.S. Const., amends. VI, VIII, XIV) as well as unspecified protections of the Illinois Constitution. Defendant also directs attention to decisions decrying the use of perjured testimony. See, *e.g., People v. Cornille* (1983), 95 Ill. 2d 497 (allowing post-conviction relief where the State's expert witness lied about his academic scholarship and achievements).

The misrepresentation of professional credentials would be a serious concern but for the fact that Weliczko was retained by, and testified for, the defense, not

the State. But the claim is even more fundamentally flawed: whatever effect Weliczko's testimony might have had was apparent when his credentials were challenged on cross-examination. The opportunity to take issue with Weliczko's testimony was therefore on direct appeal, not in a collateral attack in a post-conviction proceeding.

Failure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding. (*People v. Albanese* (1988), 125 Ill. 2d 100, 104-05.) Excused in limited circumstances (see *People v. Flores* (1992), 153 Ill. 2d 264, 274), the result of a procedural default forces acknowledgment of a conviction's finality, an elemental concern in any such proceeding (see *People v. Free* (1988), 122 Ill. 2d 367, 378).

Defendant attempts to skirt the procedural bar under an exception which looks to matters which were not a part of the record on direct appeal. He points to a copy of Weliczko's transcript from the Chicago Theological Seminary and an affidavit of an official at Gordon College in Wenham, Massachusetts, which shows Weliczko earned a degree in philosophy there.

Defendant concedes the State debunked Weliczko's assertion that he was a psychologist. But he insists a different injurious "perjury" is shown by the affidavit and documents: that is, Weliczko lied about actually holding a degree in the field of psychology.

The argument glosses over the reason why the procedural bar properly may be relaxed given matters outside the trial record. The bar normally reaches to all matters that could have been—not merely were not—earlier raised. Thus, the mere fact that support for a claim is contained in papers not in the trial record is largely immaterial. Reason to relax the bar occurs only when what is offered in the papers also explains why

the claim it supports could not have been raised on direct appeal.

For example, the default may not preclude an ineffective-assistance claim for what trial counsel allegedly ought to have done in presenting a defense. (See generally *People v. Hall* (1993), 157 Ill. 2d 324, 336-37; *People v. Kokoraleis* (1994), 159 Ill. 2d 325; *People v. Owens* (1989), 129 Ill. 2d 303, 308-09; see also *Perry v. Fairman* (7th Cir. 1983), 702 F.2d 119, 122 (collecting Illinois appellate cases).) An ineffective-assistance claim based on what the record on direct appeal discloses counsel did in fact do is, of course, subject to the usual procedural default rule. (See *People v. Kokoraleis* (1994), 159 Ill. 2d 325.) But a claim based on what ought to have been done may depend on proof of matters which could not have been included in the record precisely because of the allegedly deficient representation. But see *People v. Jones* (1985), 109 Ill. 2d 19, 23 (barring consideration of a claim of counsel's ineffectiveness for not presenting evidence which was included in the trial record).

There is nothing in the content of the affidavit and documents here offering more than what is evident from the record itself. The issue of prejudice resulting from Weliczko's testimony could have been raised on direct appeal based on the testimony elicited during the sentencing hearing. Weliczko had admitted that his academic background was in theology and ministry and that, in fact, he was not a psychologist. The admissions were fixed in the record as a result of the cross-examination. The affidavit and documents reveal no more than Weliczko's own testimony. Finding no reason to excuse the procedural default, defendant's claim must be dismissed.

## ASSISTANCE OF COUNSEL AT THE SENTENCING PHASE

Defendant claims his counsel's representation was

so deficient at the sentencing phase of trial that the process failed. Although its basis is not identified, such a claim is rooted in protections of the sixth and fourteenth amendments of the United States Constitution. (See U.S. Const., amends. VI, XIV; *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) It should be noted that counsel who represented defendant at sentencing did not represent him on direct appeal or in the post-conviction proceeding.

Defendant asserts several grounds independently support his claim. Two relate directly to Weliczko's testimony. Defendant first points to the failure to verify Weliczko's credentials. He then argues that proffering Weliczko's testimony actually undermined the defense strategy.

Neither point may now be considered. Again, defendant's opportunity to raise those arguments was on direct appeal. Any inadequacy there may have been with counsel's representation with respect to Weliczko was evident when Weliczko was cross-examined. Defendant failed to take issue with that representation on direct appeal and so is procedurally barred from doing so here (*People v. Albanese*, 125 Ill. 2d at 104-05) absent some exception. We find none.

Defendant next asserts counsel failed to independently investigate and present other mitigating evidence, including a competent psychological profile. Defendant argues that that evidence would show he had endured a childhood of psychological, emotional, and sexual abuse and that he had a history of alcohol and drug addiction. Defendant points to reports of two psychologists which recount that background in confirming it could explain defendant's acts. One adds the factor of head injury. Defendant also points to affidavits from two former teachers. They offer that defendant was a

well-adjusted student and that news of his involvement in the crimes came as a shock.

The ever present duty of independent investigation in a criminal defense effort (see *United States v. Decoster* (D.C. Cir. 1979), 624 F.2d 196, 209-10) is to be judged using a standard of reasonableness in light of all circumstances presented (*Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066). Reasonableness is to be determined by considering the informed strategic choices of, as well as the information supplied by, the defendant. *Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 695-96, 104 S. Ct. at 2066.

Initially, then, it bears noting that Weliczko, who, it must be remembered, was retained by defendant's own parents, had already generated a "psychological" evaluation. Ignoring, as would be proper in separately analyzing this issue, that an ineffectiveness claim for not verifying Weliczko's training in psychology is barred, the evaluation's existence would seem reason enough to dismiss the claim that counsel was ineffective for not having obtained another. The State suggests just such a disposition. But defendant's argument fails substantively as well.

Courts may resolve ineffectiveness claims against the two-part test of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, reaching only the prejudice component, for lack of prejudice renders irrelevant the issue of counsel's performance. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525-27, adopting *Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) That involves looking at the findings unaffected by error, accounting for the effect of error on remaining findings, and answering, in the end, whether the decision would "reasonably likely" have been different. (*Strickland*, 466 U.S. at 695-96, 80 L. Ed. 2d at 698-99, 104 S. Ct. at 2068-69.) The assessment "must exclude the possibility of

arbitrariness, whimsy, caprice, 'nullification,' and the like" (*Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068)—an important observation given that, in this State, the sentencer could have elected to preclude the death penalty for any reason found to be sufficiently mitigating (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(h)). Just as importantly, the assessment may include "evidence about the actual process of decision" if that evidence is a part of the record of the proceedings being reviewed. *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

The unaffected findings show that defendant, then 25 years old, enlisted the aid of two juveniles to methodically chart a plan to isolate, bind, and gag a 15-year-old girl for purposes of raping her, stabbing her to death, and, in the end, concealing the corpse. (See *Erickson*, 117 Ill. 2d at 279-83.) For those crimes, defendant was remorseless. He bragged about the stabbing immediately after the deed. He boasted of the crimes days after and even did so much later when detained in a county jail awaiting trial. Other aggravating evidence, including the commission of another rape at knife point and a third threatened one, attests to some pattern of sexual assault against women.

Any laxity of counsel notwithstanding, what is offered to bolster the ineffectiveness claim does not show the result would "reasonably likely" have been different, excluding the possibility of arbitrariness. Briefly, the psychologists' reports could, at best, only suggest what may have explained defendant's criminal behavior of July of 1982. The evaluations were produced years after the crimes and, apparently, without the aid of the trial record, which revealed, through witnesses' testimony, defendant's actual behavior. The affidavits of the teachers, one from fourth grade and one from high school, disclose that neither maintained close contact

with defendant after he left their respective classrooms. And, if anything, they show defendant to be polite, intelligent, and engaging, not a person troubled by a disturbed psyche which might account for his criminal behavior.

The record is also revealing as to the process of decision, underscoring the lack of prejudice which might have been occasioned by any deficiencies of counsel. The trial judge, whom defendant elected to impose sentence, actually took into account the notion that defendant may have suffered from a personality disorder. In addition, the trial judge noted that a presentencing investigation report on defendant revealed a background free of what might be normally encountered given the nature of the crimes. It would appear, then, that the trial judge on his own considered, and rejected, the gist of what defendant hoped the evidence might show.

Defendant raises two other issues, tangentially related to claims of ineffectiveness addressed above, insisting each supports the need for an evidentiary hearing on the petition.

Defendant claims the judge who ruled on the post-conviction petition did so improperly by guessing at how the original trial judge, who recused himself, would have ruled in light of the evidence defendant claims should have been presented.

Both defendant's post-conviction counsel and the State conceded that the judge ruling on defendant's petition could do so after reviewing the trial transcript and other evidence in the record. The judge stated that he did, indeed, review the entire record and that he, himself, not the trial judge, found the petition to be without merit. The judge did refer to the original trial judge by name, stating he reviewed the materials supporting defendant's petition just as the sentencing judge would have had the materials been presented in

mitigation. A fair reading of those remarks, however, does not show that the judge evaluated defendant's petition in any way other than as defense counsel and the State conceded would be the only way possible. No prejudice is found here.

Finally, defendant notes that his parents had executed a promissory note for the balance of fees for counsel's representation. Ultimately, counsel sued to collect on the note. Defendant now theorizes that the failure to obtain a competent psychological profile may have been due to a reluctance to incur additional costs. If so, defendant reasons, the conflict contributed to counsel's ineffectiveness.

The record answers any speculation as to why counsel did not seek out a psychological profile in addition to Weliczko's evaluation. The reasons are not as defendant suggests. Surprised by Weliczko's disclosure of his true background on cross-examination, counsel sought a continuance of the hearing to obtain an "acceptable" evaluation. (See *Erickson*, 117 Ill. 2d at 301.) That request, though denied (see *Erickson*, 117 Ill. 2d at 301-02), would be inconsistent with a reluctance to incur additional expense on defendant's behalf. Further, as earlier noted, an evaluation of defendant had already been generated. Without reason to doubt Weliczko's competency, the evaluation's existence, not conjecture about preoccupation with collecting fees, explains the failure to produce another.

## REFUSAL TO GRANT CONTINUANCE

Defendant asserts he is entitled to an evidentiary hearing for reasons related to the refusal of a continuance to produce a competent psychological evaluation. But the same argument was raised, and rejected, on direct appeal. (*Erickson*, 117 Ill. 2d at 301-02.) The matter cannot be relitigated in a post-conviction proceeding under principles of *res judicata. People v.*

*Del Vecchio* (1989), 129 Ill. 2d 265, 284; *Albanese*, 125 Ill. 2d at 104-05, citing *People v. Silagy* (1987), 116 Ill. 2d 357, 365.

## WAIVER OF JURY FOR SENTENCING

Defendant claims he waived the jury for the sentencing phase without knowing that if even one juror voted to spare his life a death penalty was impossible. (See Ill. Rev. Stat. 1989, ch. 38, par. 9—1(h).) But, in fact, defendant answered affirmatively when the trial judge asked if he understood that, like the finding of guilt, death had to be the jury's unanimous choice, meaning that all 12 jurors had to agree on the penalty. Nevertheless, defendant states that had he better understood the unanimity requirement, he would not have waived the jury for sentencing.

Defendant concedes that on direct appeal he argued, without success, that the judge's admonishment was insufficient. (See *Erickson*, 117 Ill. 2d at 295-96.) However, he insists a different issue is raised here: whether an evidentiary hearing is required because he generated a sworn statement revealing he did not truly understand the unanimity requirement.

It is difficult to see how that different characterization of the issue might change the nature of the claim. The underlying question remains whether there was a knowing, intelligent, and voluntary waiver of the right to a jury for sentencing purposes. That question was answered positively on direct appeal. See *Erickson*, 117 Ill. 2d at 295-96; see also *People v. Ramey* (1992), 152 Ill. 2d 41, 59-60 (holding that knowledge of the unanimity requirement is immaterial to assessment of whether a defendant's waiver of a jury for sentencing is valid).

Presumably, defendant's argument is that the waiver could not have been knowing or intelligent if, despite understanding that all 12 jurors had to agree on death, he stood unenlightened of the implication that a

lone juror could block it. But if the admonishment was sufficient, and it was, and defendant understood its meaning, and he said he did, it can matter little that he now swears he was ignorant of a nuance he now realizes. Defendant's answer for the record that he understood the admonishment belies the assertion that he did not really understand the workings of the unanimity rule. There is no need for an evidentiary hearing on the issue.

## WAIVER OF PRIVILEGE AGAINST SELF-INCRIMINATION

Defendant elected to testify during the guilt phase of trial. He now complains he did so only because counsel had rhetorically asked whether defendant "would like to go to prison for many years" without "having *** told his story." Defendant does not assert that he was not aware of his right not to testify. He argues only that counsel's question was tantamount to coercion because it assured a conviction unless defendant did so.

Given the realities of this case, the question is more reasonably characterized as advice defense counsel would be expected to have imparted to defendant. Defendant's own testimony was, in fact, the sum and substance of his defense. No other evidence was offered to counter the considerable case the State assembled, which included testimony from the other criminal participants.

## CHALLENGE TO THE ILLINOIS DEATH PENALTY SCHEME

Defendant last attacks the constitutionality of the death penalty scheme. Specifically, defendant focuses on the requirement that death will be imposed absent mitigation sufficient to preclude it. Defendant also argues the statute does not provide defendants with a right to

discovery. The arguments were rejected, respectively, in *People v. Strickland* (1992), 154 Ill. 2d 489, 538-40, and *People v. Foster* (1987), 119 Ill. 2d 69, 101-03. We decline to reconsider those conclusions.

For the reasons above, we affirm the judgment of the circuit court. We direct the clerk of this court to enter an order setting Tuesday, November 15, 1994, as the date on which the sentence of death, entered by the circuit court of Cook County, shall be carried out. Defendant shall be executed in the manner provided by law. (Ill. Rev. Stat. 1991, ch. 38, par. 119—5.) The clerk of this court shall send a certified copy of this mandate to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is now confined.

*Affirmed.*

JUSTICE McMORROW, dissenting:

I dissent because I believe the defendant is entitled to an evidentiary hearing to prove his allegations of ineffective assistance of counsel; defendant should not be barred from proving his allegations under the doctrine of waiver.

The defendant's post-conviction petition raises a serious allegation that his trial counsel was ineffective because he failed to discover Weliczko's allegedly fraudulent and perjured misrepresentation that Weliczko was a trained mental health provider qualified to testify regarding whether defendant suffered from a substantial emotional or mental disability. This alleged ineffectiveness was compounded by the attorney's alleged failure to investigate and present the testimony of truly qualified mental health experts who could have provided critical mitigating evidence to support defendant's claim that he should be spared the death sentence because he suffered from a substantial mental disturbance.

The defendant's theory of defense at his death

sentence hearing was that he suffered from a severe emotional or mental disturbance at the time of the offenses. Defendant's sole witness in his behalf was John Weliczko, who represented on direct examination that he was a psychologist. On cross-examination, Weliczko admitted that he was not a psychologist and that he had not been wholly forthright on direct examination with respect to his credentials. However, Weliczko maintained that he was a "psychotherapist" and that he had substantial training, background, and experience as a mental health provider.

Prior to the sentencing hearing, defendant's trial counsel thought that Weliczko was a qualified psychologist. It was only at the sentencing hearing that defense counsel learned that Weliczko was not a psychologist.

In view of Weliczko's admissions during the defendant's sentencing hearing, the trial court was aware that Weliczko had not been completely truthful with respect to his credentials as a mental health provider. Although the trial court did not recognize Weliczko as an "expert," the trial court nonetheless believed that Weliczko was a psychotherapist who could provide an opinion useful to the court at the sentencing hearing. As a result, the trial court admitted Weliczko's testimony into evidence and relied on Weliczko's psychological evaluation of the defendant in deciding whether to impose the death sentence.

However, according to the defendant's post-conviction petition, what the trial court and the defendant's trial counsel did not know was that Weliczko had no training, background, or *bona fide* experience in psychology whatsoever. In addition, the defendant's post-conviction petition indicates that the trial court and defendant's trial counsel did not know that Weliczko's psychological assessment and evaluation of the defendant was utterly unreliable. Moreover, affidavits of

qualified mental health providers, as attached to the defendant's post-conviction petition, support defendant's claim that he suffered from a significant mental disturbance. These affidavits further indicate that Weliczko's report contained a completely erroneous and incompetent psychological evaluation of the defendant.

The majority is incorrect to hold that defendant's challenges to Weliczko's testimony are waived. The claims are not waived, because they raise new arguments based on new evidence that was not part of the record from defendant's direct appeal. The majority is also wrong when it finds that defendant was not prejudiced by the absence of the additional psychological evidence presented in support of defendant's post-conviction petition. Whether defendant's allegations of ineffective assistance of counsel are sufficient to satisfy the standard of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, must be determined following an evidentiary hearing, and cannot lawfully be determined on an appeal from the trial court's dismissal of the post-conviction petition prior to evidentiary hearing.

For these reasons, I disagree with the majority's refusal to grant defendant an evidentiary hearing with respect to his allegation that he was deprived of the effective assistance of counsel at his death sentence hearing.

I. Waiver of Challenges to Weliczko's Testimony

The majority refuses to consider whether the failure of defendant's trial counsel to learn that Weliczko lacked any credentials or experience in the mental health field may have deprived defendant of the effective assistance of counsel. The majority claims that the "defendant's opportunity to raise" an argument regarding defense counsel's failure "to verify Weliczko's credentials" arose "on direct appeal." (161 Ill. 2d at

89.) The majority offers that "[a]ny inadequacy there may have been with counsel's representation with respect to Weliczko was evident when Weliczko was cross-examined." (161 Ill. 2d at 89.) The majority concludes that defendant "failed to take issue with that representation on direct appeal and so is procedurally barred from doing so here [citation] ***." 161 Ill. 2d at 89; see also 161 Ill. 2d at 87-88.

I disagree with the majority on this issue. The defendant's argument of ineffective assistance of counsel with respect to the Weliczko testimony is not waived, because the pertinent evidence on this issue, presented by the defendant in his post-conviction petition, is evidence that does not appear in the record of his trial court proceedings. Also, this new evidence supports an argument the defendant did not make and could not make on direct appeal: that Weliczko's testimony was fraudulent and perjured because Weliczko had no *bona fide* training, experience, or background in psychology that would warrant introduction of his report and opinions.

To justify its finding of waiver, the majority minimizes the nature of the defendant's claim, reasoning as follows:

> "There is nothing in the content of the affidavit and documents here offering more than what is evident from the record itself. The issue of prejudice resulting from Weliczko's testimony could have been raised on direct appeal based on the testimony elicited during the sentencing hearing. Weliczko had admitted that his academic background was in theology and ministry and that, in fact, he was not a psychologist. The admissions were fixed in the record as a result of the cross-examination. The affidavit and documents reveal no more than Weliczko's own testimony. Finding no reason to excuse the procedural default, defendant's claim must be dismissed." 161 Ill. 2d at 88.

However, defendant does offer more than what was

evident from the appellate record. Defendant alleged two glaring falsities in Weliczko's trial testimony. First, Weliczko testified on cross-examination that he earned a doctorate degree in counseling psychology from the Chicago Theological Seminary. According to defendant's post-conviction petition, Weliczko did not receive a degree in counseling psychology; he received a doctor of ministry degree. Second, Weliczko testified at the sentencing hearing that he earned a B.S. degree in psychology and philosophy from Gordon College. According to defendant's post-conviction petition, Weliczko did not receive a B.S. degree in psychology and philosophy; he received a B.A. degree in philosophy. Consequently, contrary to Weliczko's trial testimony, Weliczko allegedly did not have the education, background, or training in psychology to qualify him to provide a psychological evaluation of the defendant.

The new evidence submitted in support of defendant's post-conviction petition went far beyond the revelations to which Weliczko admitted when he testified at the defendant's sentencing hearing. The record reveals that the trial court admitted Weliczko's opinion based upon the trial court's allegedly mistaken belief that Weliczko was a qualified psychotherapist, whose opinion regarding defendant's mental and emotional condition could aid the court in its decision whether to impose the death penalty. Contrary to the impressions of the trial court, however, Weliczko allegedly was not a qualified mental health provider, and his opinion was therefore of no genuine value to the trial court. According to defendant's post-conviction petition, the trial court erroneously relied upon Weliczko's evaluation of the defendant, although that evaluation allegedly was an incompetent and grossly inaccurate assessment of the defendant's mental and emotional condition. Defendant's post-conviction petition alleged that the report

prepared by Weliczko "does not constitute a competent psychiatric evaluation report" because it "deviates significantly from what is customarily found in a competent psychiatric report in a number of ways." Defendant offered the affidavits of qualified mental health professionals, who stated that Weliczko's report was wholly inadequate, grossly inaccurate, and contained an utterly erroneous psychological evaluation of the defendant.

The psychological evaluations offered in support of defendant's post-conviction petition indicated that defendant had been raised in a troubled and dysfunctional family and suffered from neurological deficit caused by several head injuries and years of polysubstance abuse. In comparison, Weliczko testified that defendant suffered from a personality disorder, and made no reference to defendant's trouble childhood, dysfunctional family and upbringing, or defendant's suffering from neurological damage or substance abuse.

It is also noteworthy that in his post-conviction petition, defendant submitted various documents relating to a Federal prosecution in which Weliczko pled guilty to bank fraud. Memoranda written by attorneys in the United States Attorney's office indicate that Weliczko had a pattern of defrauding individuals and companies, and noted his false testimony in the instant cause as an example of this pattern of behavior. The evidence of Weliczko's pattern of fraud and perjury was not presented to the trial court at defendant's death sentence hearing.

Given the evidence submitted in support of defendant's post-conviction petition, it is difficult to discern a lawful basis for the majority's decision to find that defendant has waived his ineffective-assistance-of-counsel argument. The majority wholly ignores that the defendant's arguments, with respect to the failure to investi-

gate and present evidence that Weliczko had no credentials to provide any testimony regarding a psychological profile of the defendant, rely upon evidence *outside the record of the defendant's direct appeal.* As such, the defendant's arguments, which relied upon this evidence, could not have been raised in his direct appeal, and are not waived in defendant's post-conviction proceeding. In *People v. Hall* (1993), 157 Ill. 2d 324, this court stated:

> "Defendant *** contends that his trial counsel failed to provide effective assistance during the death sentence hearing ***. [Citation.] Defendant claims that his trial counsel failed to present, or even investigate, meaningful mitigation evidence.
>
> The State initially responds that defendant has waived this issue in this post-conviction appeal by failing to raise it on direct appeal. It is true that where a post-conviction petitioner has previously taken a direct appeal from a judgment of conviction, issues that could have been presented on direct appeal but were not are deemed waived. *People v. Flores* (1992), 153 Ill. 2d 264, 274; *People v. James* (1970), 46 Ill. 2d 71, 74.
>
> *However, defendant's post-conviction claim relies on affidavits of several alleged mitigating witnesses. Those affidavits were not part of the record on direct appeal. Thus, defendant could not have raised the issue in his direct appeal. Accordingly, the issue is not waived in a post-conviction proceeding.* Eddmonds, 143 Ill. 2d at 528; *People v. Owens* (1989), 129 Ill. 2d 303, 308-09." (Emphasis added.) *Hall,* 157 Ill. 2d at 336-37.

In light of this reasoning in *Hall,* the defendant in the instant case cannot be barred, under the doctrine of waiver, from raising the argument that his trial counsel was ineffective for failing to investigate and introduce evidence that is not found in the record of the defendant's direct appeal.

The majority's decision is particularly disturbing and troubling because it needlessly and wrongfully conflicts with clear, unambiguous, and respected precedent of this court. For example, in *People v. Eddmonds*

(1991), 143 Ill. 2d 501, and *People v. Owens* (1989), 129 Ill. 2d 303, the waiver doctrine was not applied because the evidence relied upon by the defendants did not appear in the record of their direct appeals. In both of the decisions, this court held that a defendant is permitted to present, in post-conviction petitions, allegations based on matters that could not have been presented in a direct appeal, because they arose outside the scope of the trial court's original proceedings. This long-standing rule has been recognized in other decisions of this court as well as our appellate court. See *Eddmonds*, 143 Ill. 2d at 528; *Owens*, 129 Ill. 2d at 308-09; *People v. Wright* (1986), 111 Ill. 2d 18, 25-26; *People v. Gaines* (1984), 105 Ill. 2d 79, 91; *People v. Stepheny* (1970), 46 Ill. 2d 153, 155; *People v. Thomas* (1967), 38 Ill. 2d 321, 324-25; *People v. Heartfelt* (1992), 232 Ill. App. 3d 198, 204; *People v. Davis* (1990), 203 Ill. App. 3d 129, 139; *People v. Lee* (1989), 185 Ill. App. 3d 420, 427; *People v. Taylor* (1988), 165 Ill. App. 3d 1016, 1019; *People v. Mitchell* (1987), 163 Ill. App. 3d 1007, 1009; *People v. Cobb* (1986), 150 Ill. App. 3d 267, 270; *People v. Nix* (1986), 150 Ill. App. 3d 48, 51; *People v. Carroll* (1985), 131 Ill. App. 3d 365, 367; *People v. Edsall* (1981), 94 Ill. App. 3d 469, 472-73; *People v. Mengedoht* (1980), 91 Ill. App. 3d 239, 241; *People v. Edwards* (1980), 83 Ill. App. 3d 128, 131; *People v. Turner* (1979), 74 Ill. App. 3d 840, 844; *People v. Owsley* (1978), 66 Ill. App. 3d 234, 237; *People v. Hudson* (1978), 65 Ill. App. 3d 422, 424; *People v. Summers* (1977), 50 Ill. App. 3d 33, 35; *People v. Dennis* (1973), 14 Ill. App. 3d 493, 495; see also *People v. Johnson* (1993), 154 Ill. 2d 227; *People v. Jones* (1985), 109 Ill. 2d 19, 23-24; *People v. Myers* (1970), 46 Ill. 2d 270, 271.

Most recently, in *People v. Thompkins* (1994), 161 Ill. 2d 148, this court again acknowledged and reaffirmed that there is a valid and important distinction between ineffective-assistance-of-counsel arguments that

are waived because the arguments rely upon matters presented at trial, and ineffective-assistance-of-counsel arguments that are not waived for post-conviction review because the arguments present additional matter not found in the record of the trial court proceedings. The majority's contrary result in the instant cause is patently unfounded in legal precedent of this court.

The majority's waiver analysis in the present case is also untenable, because its reasoning has been rejected or disavowed by several Federal courts of appeal. In *Guinan v. United States* (7th Cir. 1993), 6 F.3d 468, the Seventh Circuit Court of Appeals adopted precedent, particularly with respect to preserving an ineffective-assistance-of-counsel argument for post-conviction review, that is similar to the precedent of this court which the majority now tacitly overrules. The Seventh Circuit has held that "if a defendant postpones raising the issue of ineffective assistance of counsel until the collateral stage he must have a valid reason for the postponement ***." (*Guinan*, 6 F.3d at 472.) According to the court, one "valid reason" for postponement is that the ineffective-assistance-of-counsel claim required proof of facts outside the record of the direct appeal. (*Guinan*, 6 F.3d at 472.) In a concurring opinion, Judge Easterbrook noted that "[t]hree [Federal] courts of appeals have held that ineffective-assistance claims are forfeited when not presented on direct appeal" and that the "Solicitor General has confessed error on all three" cases once petitions for writ of *certiorari* were filed before the United States Supreme Court (*Guinan*, 6 F.3d at 475, citing *Billy-Eko v. United States* (2d Cir. 1992), 968 F.2d 281, *vacated on confession of error* (1993), 509 U.S. 901, 125 L. Ed. 2d 685, 113 S. Ct. 2989; *Chappell v. United States* (7th Cir. 1989), 878 F.2d 384, *vacated on confession of error* (1990), 494 U.S. 1075, 108 L. Ed. 2d 931, 110 S. Ct. 1800; *Diaz-Albertini v. United States*

(10th Cir. 1990) (unpublished), *vacated* (1991), 498 U.S. 1061, 112 L. Ed. 2d 839, 111 S. Ct. 776).

In his concurring opinion in *Guinan*, Judge Easterbrook also made the following cogent observations:

"Like my colleagues, I yearn for a system under which one appeal resolves the entire case. Unfortunately, ineffective assistance of counsel eludes once-and-for-all disposition. Trial counsel cannot be expected to attack his own performance, and a new lawyer representing the defendant on appeal finds that it is impossible to upset a conviction by pointing to his predecessor's actions. Why impossible? Because the absence of a complete record prevents definitive action. No matter how odd or deficient trial counsel's performance may seem, that lawyer may have had a reason for acting as he did. [Citations.] Or it may turn out that counsel's overall performance was sufficient despite a glaring omission, or that the shortcoming did not prejudice the defendant. [Citations.] The trial judge is best situated to assess overall performance and prejudice, yet a claim of ineffective assistance presented on direct appeal asks the court of appeals to act without the [trial] judge's views. \*\*\*

Rules of procedure should be designed to induce litigants to present their contentions to the right tribunal at the right time. For ineffective assistance of counsel, the court of appeals on direct appeal is the wrong tribunal at the wrong time. \*\*\* Failure to call essential witnesses might show both deficient performance and prejudice, but on direct appeal all we will have is defendant's say-so that an uncalled witness was critical. To have any hope of success, the defendant must enlarge the record with affidavits establishing what testimony the witness would have provided if called, and demonstrate that his lawyer was actually aware of this potential testimony or grossly deficient in failing to find out about it. This is precisely the type of complaint that should *not* be presented on direct appeal. It must be developed in an evidentiary hearing [for post-conviction relief]." (Emphasis in original.) *Guinan*, 6 F.3d at 473-74.

As the observations made in Judge Easterbrook's concurrence show, the majority's reasoning in the

instant cause suffers from a fundamental infirmity: it never acknowledges or explains how the defendant should have brought to this court's attention, in his direct appeal, the merits of his claim that his trial attorney was ineffective because of a failure to determine that Weliczko was a fraud and a sham who had no credentials, experience, or background in psychology, psychotherapy, or counseling. The record from defendant's direct appeal does not reveal that Weliczko was a fraud and a sham. In fact this court on direct review specifically and explicitly referred to Weliczko as a "psychotherapist." (See *People v. Erickson* (1987), 117 Ill. 2d 271, 285.) The record of defendant's direct appeal would not have provided the necessary factual basis for the arguments presented by defendant in the present post-conviction proceeding.

The majority's ruling, and its failure to provide clear guidance with respect to its decision, necessarily places all criminal defendants of this State into a classic "catch-22," where they run the risk of being trapped in a number of "losing" scenarios. For example, if a defendant argues on direct appeal that his attorney was ineffective for failure to investigate certain witnesses, the court might reject his claim on the ground that the defendant cannot show what the investigation would have revealed, if the investigation had been performed. (See, *e.g.*, *People v. Williams* (1991), 147 Ill. 2d 173, 258; *People v. Orange* (1988), 121 Ill. 2d 364, 390.) If the defendant argues on direct appeal that his attorney was ineffective for failure to investigate certain witnesses and his appellate counsel includes pertinent affidavits in the briefs or record on appeal, the court may reject his argument on the theory that defendant is not permitted to supplement the record on appeal with evidentiary matters outside the record of the trial court proceedings. (See, *e.g.*, *People v. Jones* (1985), 109 Ill. 2d

19, 23-24 (amendments of record on direct appeal are limited to those necessary to correct record, not add new material never presented to trial court).) If the defendant files a post-conviction petition alleging ineffective assistance for failure to investigate certain witnesses, the court may deem the issue waived, as it does in the present case, reasoning that defendant should have presented his claim on direct appeal. Given the majority's ruling in the instant cause, I question how criminal defendants in this State will now be able to preserve and present the merits of their claims based on a failure to investigate witnesses prior to trial.

The majority's waiver decision will be especially confusing for the criminal trial bar, the trial courts, and our courts of review. In light of the majority's ruling, one is left to speculate, in uncertainty, whether a claim of perjured testimony, and ineffective assistance of trial counsel, must always be presented in the defendant's direct appeal, regardless of whether the evidence supporting the argument derives from matters outside the appellate record. The majority performs a grave disservice in its lack of clear insight or guidance on these matters.

Illinois once had a well-publicized reputation for having devised post-conviction requirements that created a "procedural labyrinth *** made up entirely of blind alleys" (*Marino v. Ragen* (1947), 332 U.S. 561, 567, 92 L. Ed. 170, 175, 68 S. Ct. 240, 244 (Rutledge, J., concurring)) that effectively insulated the court from ruling on the merits of a defendant's constitutional challenges to his criminal conviction and sentence. Our Post-Conviction Hearing Act was adopted in 1949 to overcome these shortcomings. (See generally Leighton, *Post-Conviction Remedies in Illinois Criminal Procedure,* 1966 Ill. L.F. 540, 568-71.) Unfortunately, the majority's decision harkens back to this earlier era, when technical

rules of procedure were manipulated in order to avoid or preclude substantive review of the criminal defendant's constitutional arguments.

## II. Denial of Evidentiary Hearing

Aside from its determination that defendant has waived any challenge to Weliczko's testimony, the majority suggests that trial counsel was not ineffective in failing to locate other, qualified mental health providers to offer an expert opinion in defendant's behalf. In this respect, the majority observes that the defendant's argument "fails substantively" and reviews the two-part test of *Strickland.* (See 161 Ill. 2d at 90-91.) The majority determines that the defendant was not prejudiced by trial counsel's failure to locate these additional mitigation witnesses, because the defendant would probably have been sentenced to death even if this additional evidence had been offered for consideration at the defendant's original sentencing hearing.

Specifically, the majority reasons that "[a]ny laxity of counsel notwithstanding, what is offered [in the affidavits of the mental health experts] to bolster the ineffectiveness claim does not show the result would 'reasonably likely' have been different, excluding the possibility of arbitrariness." (161 Ill. 2d at 91.) The majority's reasoning is a misstatement of the proper standard by which a defendant's post-conviction petition should be judged where the petition has been dismissed without an evidentiary hearing. The proper standard is not whether the "result would 'reasonably likely' have been different." Rather, the proper question is whether the defendant's allegations, when viewed in the light most favorable to the defendant, are sufficient to demonstrate that the defendant should receive an evidentiary hearing to prove his allegations. These legal principles are well established and longstanding. (*People v. Thompkins* (1994), 161 Ill. 2d 148; *People v. Ruiz* (1989),

132 Ill. 2d 1, 25-28; *People v. Caballero* (1989), 126 Ill. 2d 248, 259; *People v. Caldwell* (1973), 55 Ill. 2d 152, 155; *People v. Bernatowicz* (1952), 413 Ill. 181, 185; *People v. Vunetich* (1989), 185 Ill. App. 3d 415, 419; *People v. Witherspoon* (1987), 164 Ill. App. 3d 362, 365; *People v. Redmond* (1986), 146 Ill. App. 3d 259, 262-63.) For example, our appellate court has stated:

"The Post-Conviction Hearing Act provides a remedy for violation of substantial constitutional rights at trial. [Citations.] In order to require a hearing, the petitioner must substantially show that there was a violation of a constitutional right. [Citations.] Such a showing must be based on factual allegations rather than conclusory statements. [Citation.] A petitioner is not entitled to an evidentiary hearing on his petition as a matter of right. [Citations.] Rather, it is the function of the post-conviction pleadings to determine whether the petition is entitled to a hearing. [Citation.] Where the trial court determines that the allegations of the petition are sufficient to require a hearing, the petitioner must be afforded an opportunity to prove his allegations. [Citation.] On review of dismissal of a petition, an appellate court must determine whether petitioner has alleged sufficient facts to require an evidentiary hearing. [Citation.] *In making that determination this court must necessarily look to allegations contained in the petition, construed liberally in favor of petitioner and as set forth in light of the record and transcript.* [Citation.]" (Emphasis added.) *People v. Pittman* (1989), 192 Ill. App. 3d 943, 946.

The majority in the present cause does not consider whether the defendant's allegations, when liberally construed in his favor, show that the defendant is entitled to an evidentiary hearing. The majority engages in its own review of the sufficiency of the defendant's evidence, as though the majority were the trier of fact at an evidentiary hearing on the defendant's postconviction petition. As established by the considerable precedent cited above, this is not the proper focus on appeal from the trial court's dismissal of a post-

conviction petition in the absence of an evidentiary hearing.

The majority also states that the "psychologists' reports could, at best, only suggest what may have explained defendant's criminal behavior of July of 1982. The evaluations were produced years after the crimes and, apparently, without the aid of the trial record, which revealed, through witnesses' testimony, defendant's actual behavior." (161 Ill. 2d at 91.) The majority's analysis impermissibly delves into a weighing of the sufficiency of the opinions offered by the mental health experts whose affidavits were submitted in support of defendant's post-conviction petition. It is the prerogative of the trier of fact, at an evidentiary hearing, to consider the significance to be attached to the circumstance that the evaluations of the mental health experts "were produced years after the crimes." (161 Ill. 2d at 91.) Moreover, contrary to the majority's reasoning, there is nothing in the record to show whether the evaluations were prepared "without the aid of the trial record." 161 Ill. 2d at 91.

The majority also offers the observation that the trial court "actually took into account the notion that defendant may have suffered from a personality disorder." (161 Ill. 2d at 92.) However, since the psychological profile offered by Weliczko was allegedly an incompetent and inaccurate portrayal of the defendant, the trial court at defendant's sentencing hearing did not take into account accurate, *bona fide* psychological evaluations such as those submitted by defendant in support of his post-conviction petition. Moreover, the mental health professionals' affidavits attached to defendant's post-conviction petition indicated that defendant suffered from neurological impairment, not a personality disorder as suggested by Weliczko. The majority also states that the "trial judge noted that a pre-

sentencing investigation report on defendant revealed a background free of what might be normally encountered given the nature of the crimes." (161 Ill. 2d at 92.) In his post-conviction petition, the defendant has presented psychological evaluations that show the defendant did not enjoy a "background free of" disturbance or difficulty. Again, the majority wrongly engages in an unjustified and unfair weighing of the defendant's evidence without allowing the defendant the opportunity for an evidentiary hearing where the trier of fact may assess the evidence defendant presents in support of his post-conviction petition.

The record shows that there were several, highly significant differences between the opinion expressed by Weliczko at the death sentence hearing and the views stated by the mental health providers in the affidavits submitted in support of defendant's post-conviction petition. Weliczko stated that defendant had been raised in a "good *** Christian" family, where the defendant had been well taken care of and cared for by his parents. Weliczko stated that defendant became manipulative, would frequently fabricate to his parents and friends, and cared for nothing but himself. Weliczko also testified that defendant had a highly disrespectful view of women, and had relations with women that Weliczko described as "[d]irty" and short-lived. Weliczko stressed that the defendants' parents "cannot be blamed for his disorder."

The affidavits of the mental health providers described defendant as suffering from a neurological deficit prompted by several head injuries and years of polysubstance abuse. These mental health providers also stated that defendant had endured a troubled childhood in a dysfunctional family and that defendant had been the victim of sexual abuse when he was young. Given these marked contrasts in the views of Weliczko and

those of the mental health providers whose affidavits support defendant's post-conviction petition, the majority's reasoning ignores the facts shown in the record presently before us.

The substantial degree to which Weliczko's testimony was damning to the defendant at his death sentence hearing, and the extent to which his evaluations of the defendant differed from those offered by the mental health professionals relied upon in defendant's post-conviction petition, deserve detailed attention by this court. Weliczko stated that according to defendant's parents, defendant had been "a quarrelsome child" and had been "basically restless as a young man," although he had had "no unusual disruptions" while he was growing up. Weliczko stated that defendant's parents said that defendant had a "chronic history" of "a lot of illnesses" that the parents suspected were "fabricated." Weliczko stated that defendant's parents represented that defendant, especially while a teenager, engaged in "a lot of lying and manipulating." Weliczko testified that the parents "felt they gave him a good nurturing—and I would say the term carefully—a Christian environment, as good Roman Catholic parents attempting to bring him to church and music lessons and things that are seemingly normal in the life of a young person growing up. They attempted to discipline him as well as provide a good home." Weliczko testified that defendant's parents stated that defendant held many jobs, but only for short periods of time. He represented that defendant left these jobs "[j]ust [from] a feeling of discontent. A kind of functional attitude that nothing is good enough."

Weliczko testified that he had interviewed defendant on several occasions after defendant was arrested. At the first interview, defendant said that he was "[a]ngry and upset" and that he felt he was not going to

receive a fair trial. Weliczko stated that at a subsequent interview, he "discuss[ed] women" with defendant. Weliczko asked defendant how many women he had dated since defendant was 17 years of age. According to Weliczko, defendant responded that "he had dated at least or related to at least 30 women and gave a cursory comment that said, 'And most of them enjoyed a good blow job.' " Weliczko observed that defendant's comment "kind of took [him] back" and that it "wasn't very enjoyable in terms of hearing." Weliczko stated that he found defendant felt a "sense of isolation and loneliness at times mixed with feelings of depression and withdrawal." Weliczko said that defendant also harbored a great deal of anger, which he directed at himself and a number of other persons. Weliczko stated that defendant did not feel remorseful for anything, and that defendant felt sorry for no one except himself. Weliczko said that he saw defendant as a person who could be violent, mostly from a sense of frustration and fear. Weliczko also testified that defendant would do things to seek approval from others. He stated that defendant's past relations with women had been short-lived, because defendant "got tired of them" and thought of them "[l]ike they were almost chattel."

Weliczko stated that defendant's personality traits revealed that he suffered from a narcissistic personality disorder. Weliczko characterized the disorder as neurotic, rather than pathological. Weliczko explained:

"The grandiose section of self importance this idea of somehow 'I had to exaggerate my achievements and my talents,' preoccupation with fantasies, women without doubt entered into that realm that, 'Somehow I would fulfill something by engaging a woman to do what I wanted to do, but I had no ability to be intimate on a real healthy basis. I used them and I cut them off.' Dirty relationships and a blow job, as stated by him.

A feeling of ideal love to a point of not Hallmark cards,

but an imaginary fantasy that a woman was going to take him and go off and make it all better. Exhibitionism, the idea—\*\*\* this need for constant attention. \*\*\* The other element is no question of personal exploitiveness."

Weliczko stated, for example, that defendant "has admitted to the fact that he spent money many times, not his own, and cheated to do that and lied about it and did things as favors to gain favors."

On cross-examination, Weliczko stated that he did not find any evidence that the defendant had been abused as a child, and that defendant was raised in a "good, Christian home" and had been given things that a lot of children never receive.

In his written report, submitted to the court, Weliczko stated that defendant "lack[ed] empathy for the pain of others." Weliczko's report also represented that defendant "overestimated his sexual prowess and abilities as a man with unrealistic fantasies of achievement, especially with women." The report stated that defendant "described his relationships to [women] as 'dropping one and picking up another,' and [that defendant] admitted to impregnating several." Weliczko's report also represented that defendant engaged in "[i]nterpersonal exploitiveness, in which others are taken advantage of in order to indulge one's own desires or for self-aggrandizement \*\*\* and the personal integrity and rights of others are disregarded."

Weliczko's written report "[r]ecommend[ed]" that it "must be understood [that defendant] \*\*\* [i]s experiencing the diagnosed personality disorder." The report's recommendations acknowledged that defendant's "behavior exemplified" defendant's "inability to make wise choices" and that "[t]hose unwise choices must be judged by the court." Weliczko's report suggested that defendant receive psychiatric treatment "for at least one year in a hospital." The report also stated:

"[Defendant's] parents *cannot* be blamed for his disorder.

The real causes are society, peers and the judicial system who allowed his self-deception to escalate to a point of self-destruction. ***

Suicide precautions must be administered since without psychological intervention, [defendant's] need for approval may drive him toward an aggrandized view that self-inflicted death is his only way of saying, 'he was never guilty' and deserves NO punishment for *EVEN* the faintest implication that he contributed in the group (mass) destruction of the life of [the victim]. ***

[Defendant's] participation and his accomplices, must be viewed *as a group portrayal* of a narcissistically preoccupied teenage band of reckless, unempathetic and psychologically unstable young men and women. [Defendant] cannot be the only guilty party. The blood of the victim will never be psychologically excised from the stained group who partied at the Holiday Inn, and those who assisted in the concealment of evidence." (Emphasis in original.)

In contrast to the damning evidence offered by Weliczko, the affidavits of the mental health experts submitted in conjunction with defendant's post-conviction petition provide a markedly different portrayal of the defendant. The psychological report prepared by Dr. Brad Fisher, a clinical correctional psychologist, stated that the psychologist had evaluated defendant on two occasions in 1990 and had reviewed numerous reports and administered several tests to evaluate defendant's psychological condition.

According to Dr. Fisher's report, defendant was adopted by Andzia (then age 39) and Elvin (then age 46) Erickson when defendant was only a few days old. Defendant had only one sibling, a brother much older than the defendant. Dr. Fisher's report stated that defendant's "parents reported no particular problems during this time [his early developmental years], either academically or socially." The psychologist's report also noted, however, that "family members and Paul report that he was sexually abused by a priest when Paul served as an

altar boy at the family's church." Dr. Fisher also noted that defendant had a history of head trauma and headaches. According to Dr. Fisher's evaluation, Paul also had a history of "polysubstance abuse" (alcohol and drug abuse). He also had several episodes of blurred vision, headaches, concussions, or falls.

Dr. Fisher reported that defendant's mother "presents as schizophrenic, disorganized type." Dr. Fisher reported that the mother's mental instability, defendant's adoption, and his head injuries caused defendant considerable stress, and that he "remained an immature person who has a very low self-esteem."

Dr. Fisher stated that in behavioral observations, the defendant was alert, cooperative, and able to perform most of the tasks. However, he "demonstrated several instances of marked deficits in long-term recall processing." The psychologist stated that this was not "surprising considering his extensive drug abuse and probable neurological damage." Dr. Fisher stated that the defendant was not psychotic or retarded, "but *** has significant and diffuse neurological impairments, probably chronic and longstanding."

Dr. Fisher stated that the "brain dysfunction evident from the history and the testing related to significant difficulties in cognition." Dr. Fisher stated that it was his professional opinion, to a reasonable degree of professional certainty, that defendant "was under extreme mental and emotional disturbance at the time of the offenses and that his capacity to conform his conduct to the requirements of the law was substantially impaired."

Dr. Fisher stated that he had reviewed Weliczko's report that was admitted into evidence at the sentencing hearing. In his opinion, the report "deviates significantly from what is customarily found in a competent psychological evaluation report." Dr. Fisher stated that the di-

agnosis given by Weliczko was "inaccurate" and that certain of the recommendations given by Weliczko "appear to represent Mr. Weliczko's personal views." Dr. Fisher stated that in his opinion, Weliczko's document "does not appear to be in accord with the usual procedures of a competent psychological assessment and is therefore likely to be inadequate, inaccurate, and unreliable." Dr. Fisher stated the following in summary:

"This 33 year old white male is currently on Death Row Status in the Illinois State Prison System. The results of the current evaluation indicate that he is likely to be suffering at the current time from a level of neurological damage which can most easily be attributed to a combination of his substance abuse, combined with multiple head trauma. The current test and case records review findings indicate that the organic impairment has been present for a considerable period of time, and certainly would have been present at the time these crimes were committed. Since the neurological damage was exacerbated by the use of alcohol and/or drugs, Mr. Erickson's capacity to make reasonable judgments, to form coherent logic, and to properly connect ideas and make appropriate associations was likely to have been impaired. In short, his ability to make logical cognition and to make reasonable judgments were significantly impaired as a result of the substance abuse. This impairment was sufficiently severe that, in my opinion, Paul Erickson was under extreme mental and emotional disturbance at the time of the offense. Furthermore, his capacity to conform his conduct to the requirements of the law was substantially impaired. A number of non-statutory mitigating factors relevant to Mr. Erickson's mental state were also present, including but not limited to, the above mentioned difficulties in making appropriate decisions, his immaturity and dependence upon others, and his deepseated desire for acceptance from whomever it could be obtained. Considering the long duration of his drug and alcohol abuse, it would be highly unlikely for him not to have a significant level of brain damage."

A second psychological evaluation report was pro-

vided by David Randall. This evaluation was substantially similar to the one provided by Dr. Fisher.

In light of the substantial and significant evidence cited by defendant in his post-conviction petition, I believe that defendant should receive an evidentiary hearing with respect to his allegation of ineffective assistance of counsel. Because the instant cause involves capital punishment, this court should be especially cautious to provide ample opportunity for the defendant to present evidence in his own behalf in his efforts to receive a new sentencing hearing.

The majority erroneously finds defendant has waived his challenge to Weliczko's testimony. Weliczko was the only defense expert to testify in support of defendant's defense of emotional and mental disturbance. The majority fails to acknowledge that the trial court was never advised of the true nature and extent of Weliczko's allegedly fraudulent and perjured representations that he was a qualified mental health professional. The majority also ignores defendant's allegation that Weliczko deceived the trial court from learning that Weliczko did not have the training, background, or education as a mental health provider necessary to give a psychological evaluation of the defendant. The majority fails to recognize that the opinions offered by Weliczko were highly damaging to the defendant, and that the affidavits of the mental health providers, submitted in support of defendant's post-conviction petition, indicate that defendant suffered from significant mental disturbance.

In addition, the majority impermissibly assumes the role of finder of fact, weighs the evidence submitted by the defendant, and denies the defendant any opportunity for a hearing where he could present the mental health provider witnesses to support his allegations of ineffective assistance of counsel. According to the affidavits of the mental health professionals submitted in support of

defendant's post-conviction petition, these witnesses could provide valuable insight into defendant's mental and emotional condition, thus offering significant mitigating evidence with respect to defendant's sentence. Nevertheless, the majority refuses to grant the defendant even an evidentiary hearing to attempt to prove the allegations raised in his post-conviction petition. I cannot concur in this result.

For these reasons, I respectfully dissent.

JUSTICE HARRISON joins in this dissent.