NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190665-U

NO. 4-19-0665

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 8, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Champaign County |
| DONALD C. MOSS, | ) | No. 14CF1601 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court did not err by dismissing defendant's *pro se* postconviction petition at the first stage of the proceedings.

¶ 2   Defendant, Donald C. Moss, appeals the May 2, 2019, order of the Champaign County circuit court, summarily dismissing his *pro se* postconviction petition as frivolous and patently without merit. Defendant contends the circuit court's dismissal was erroneous because the petition stated the gist of a constitutional claim for ineffective assistance of counsel. We affirm.

¶ 3                             I. BACKGROUND

¶ 4   In November 2014, the State charged defendant with two counts of aggravated battery (720 ILCS 5/12-3.05(a)(1) (West 2014)) and one count of attempt (first degree murder) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2014)). The circuit court appointed the public defender to

represent defendant. In June 2015, the public defender filed a second supplemental answer to discovery, indicating defendant intended to prove he had an alibi. Later that same month, the State charged defendant with one count of aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2014)), and the defendant substituted the public defender with private counsel. Before trial, the circuit court dismissed the two counts of aggravated battery on the State's motion.

¶ 5 At defendant's November 2015 trial, the State presented the testimony of the following witnesses: (1) Megan Stauffer, the victim; (2) Victoria Hanthorn, Stauffer's girlfriend; (3) James Albers, an eyewitness; (4) Sarah Albers, an eyewitness; (5) Douglas Sawyer, an eyewitness; (6) Champaign County deputy Casey Donovan; (7) Champaign County sergeant David Sherrick; (8) Champaign County deputy Jason Atwood; (9) Champaign police officer Matthew Henson; (10) Champaign County sergeant Christopher Darr; (11) Dr. Michael Colla, a cardiovascular and thoracic surgeon; (12) Scott Rochowicz, a forensic scientist with the Illinois State Police; (13) Champaign County investigator Nicki Bolt; (14) Dana Pitchford, a forensic scientist with the Illinois State Police; (15) Bradley M. LeBar, a forensic scientist with the Illinois State Police; and (16) Lindell Moore, a forensic scientist with the Illinois State Police. The State also presented numerous exhibits. Defendant did not present any evidence. The evidence relevant to the issue on appeal follows.

¶ 6 Stauffer testified she met defendant in 2013. They dated for eight or nine months. Stauffer worked at Wal-Mart, which is where they met. After they broke up, defendant would sometimes show up at Wal-Mart and leave letters in her mailbox.

¶ 7 On November 21, 2014, during a work break, she shared a cigarette with a male coworker at her car at approximately 3 p.m. At about 4:40 p.m., after leaving work, she heard a knock on her car window while she was stopped at a stop sign in the store parking lot.

Defendant was standing outside her car. She rolled down her window, and he asked if she could give him a ride to a car a few stoplights down the road. He was wearing a dark coat, a black hat, and gloves. Stauffer agreed to give him a ride.

¶ 8 Stauffer followed his directions down Prospect Avenue. After they passed the hill near Olympian Drive, defendant said the car was not there anymore. He apologized and said she could take him back. Stauffer made a U-turn at the next intersection. Defendant mentioned he had not had a cigarette in a while. As Stauffer was looking for a cigarette for him, she got hit and felt an impact in her chest. She could feel something in her chest. She looked down and saw a knife in her chest with blood flowing from the knife's location. Defendant was still swinging at her. She started to scream. Defendant was yelling at her, asking who she was with on her smoke break. She kept screaming while trying to get out of the car. She was able to get a door open, but defendant shut it. She was finally able to get the door open again, got out of the car, and ran into traffic. Defendant got out of the car behind her. Some other people stopped and helped Stauffer and kept defendant away from her. The blade from the knife was still in her chest. At some point she sat up, the blade fell out of her chest, and the wound started bleeding more.

¶ 9 James testified he was driving with his wife on Prospect Avenue when he saw Stauffer trying to get out of the car. When she got out of the vehicle, Stauffer was screaming and running down the road. She had a knife blade sticking out of her chest. James stopped his car as did the car behind him. Sarah, James's wife, ran to help Stauffer. A man also got out of Stauffer's vehicle, and James identified the man as defendant. James also testified the man who got out of Stauffer's car was wearing a black jacket with red on part of the sleeves and back. James believed it was a design or logo, but he could not recall what logo it was. James testified

the jacket the police recovered from defendant when he was arrested was identical to the one he saw the man wearing. Sarah testified the man was wearing a dark jacket with a flash of red or orange. Additionally, James testified he heard Sarah ask Stauffer who did this to her and Stauffer responded, "Don." Sarah testified Stauffer said, "Don" several times and said "Most" or "Moss" as the person's last name.

¶ 10 The only forensic evidence connecting defendant to the crime was a hat found inside Stauffer's car, which had two deoxyribonucleic acid (DNA) profiles on it. The major profile matched defendant, and the minor profile did not match defendant or Stauffer. Defendant's DNA was not on a knife handle that was recovered near the intersection by Sergeant Darr.

¶ 11 Sergeant Darr testified he assisted with the execution of a search warrant of defendant's apartment on November 22, 2014. During the search, the police recovered numerous receipts from purchases, which were lying on a table. Copies of the receipts were admitted into evidence as State's exhibit No. 24. Sergeant Darr also testified he went to the intersection of Prospect and Waxing streets to get a feel for the scene. While walking around, he found a knife handle laying in some grass.

¶ 12 On December 4, 2014, Sergeant Darr went to a U-Haul rental business because the police learned defendant rented a U-Haul on the day Stauffer was stabbed. Sergeant Darr received the receipt for the U-Haul. The U-Haul receipt was admitted into evidence as State's exhibit No. 31. That same day, he interviewed Shilo Hale, who had a child, Christian Moss, with defendant. On the day of the stabbing, Shilo had been communicating with defendant via text messages. Shilo gave Sergeant Darr consent to look at her cellular telephone. Sergeant Darr took photographs of the text messages between Shilo and defendant. Those photographs were

- 4 -

admitted as State's exhibit Nos. 32A through 32E. Sergeant Darr then went to Christian's daycare and interviewed Katie Hart, an employee of the daycare. Sergeant Darr obtained a copy of a sign-in sheet for November 21, 2014. It showed Christian was picked up at 4 p.m. by "Dad." The copy of the sign-in sheet was admitted as State's exhibit No. 33. Sergeant Darr attempted to obtain surveillance video from businesses to corroborate defendant's statements about his whereabouts on November 21, 2014, but could not obtain any.

¶ 13        Additionally, Sergeant Darr testified he learned about Jasmine Gary from defendant. Gary worked with defendant at Home Depot. During his interview with Gary, he learned Gary had contact with defendant after the time of the stabbing. The first two times she had contact with him were by cellular telephone. The third contact was a physical meeting with him. When Sergeant Darr testified the personal contact with defendant was at 5:30 p.m., defense counsel objected, and the circuit court sustained the objection. Sergeant Darr also interviewed Shilo's daughter, Mercedes Coleman, and Shilo's father, Robert Hale, regarding defendant's whereabouts around the time when the stabbing occurred.

¶ 14        At the conclusion of the trial, the jury found defendant guilty of both attempt (first degree murder) and aggravated domestic battery. Defendant filed a motion for judgment of acquittal notwithstanding the verdict, or in the alternative, a motion for a new trial. At a joint January 2016 hearing, the circuit court denied defendant's posttrial motion and sentenced him to 30 years' imprisonment for attempt (first degree murder). The court did not sentence him on aggravated domestic battery because it merged with attempt (first degree murder). Defendant filed a motion to reconsider his sentence, which the court denied after a March 2016 hearing.

¶ 15        Defendant appealed and argued the trial court's imposition of a 30-year prison sentence was excessive. This court affirmed defendant's conviction and sentence. *People v.*

*Moss*, 2018 IL App (4th) 160182-U. Defendant filed a petition for leave to appeal to the Illinois Supreme Court, which was denied. *People v. Moss*, No. 123841 (Ill. Sept. 26, 2018) (supervisory order).

¶ 16　　　　In February 2019, defendant filed *pro se* the petition for relief under the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) at issue in this appeal. In his postconviction petition, defendant asserted he was denied his right to effective assistance of both trial and appellate counsel for a multitude of reasons. The only supporting document attached to defendant's postconviction petition was his own affidavit. In his affidavit, defendant stated he gave his trial counsel names and addresses of defense witnesses, and trial counsel never called or contacted any of the witnesses. He also stated trial counsel never fully investigated the circumstances and particulars of defendant's case. On May 2, 2019, the circuit court filed a written order, dismissing defendant's petition at the first stage of the postconviction proceedings. The court found defendant's claims were "in large part devoid of any facts or specifics." It also noted defendant was challenging counsel's decisions that were matters of trial strategy and defendant did not plead prejudice.

¶ 17　　　　On September 26, 2019, defendant filed a motion for leave to file a late notice of appeal in compliance with Illinois Supreme Court Rule 606(c) (eff. July 1, 2017). See Ill. S. Ct. R. 651(d) (eff. July 1, 2017) (providing the supreme court rules governing criminal appeals apply to appeals in postconviction proceedings). This court granted defendant's motion. Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 18　　　　　　　　　　　　　　II. ANALYSIS

¶ 19　　　　The Postconviction Act "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the

federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1074-75 (2010). A proceeding under the Postconviction Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. English*, 2013 IL 112890, ¶ 21, 987 N.E.2d 371. The defendant must show he or she suffered a substantial deprivation of his or her federal or state constitutional rights. *People v. Caballero*, 228 Ill. 2d 79, 83, 885 N.E.2d 1044, 1046 (2008).

¶ 20        The Postconviction Act establishes a three-stage process for adjudicating a postconviction petition. *English*, 2013 IL 112890, ¶ 23. Here, defendant's petition was dismissed at the first stage. At the first stage, the circuit court must review the postconviction petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). To survive dismissal at this initial stage, the postconviction petition "need only present the gist of a constitutional claim," which is "a low threshold" that requires the petition to contain only "a limited amount of detail." *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996). Our supreme court has held "a *pro se* petition seeking postconviction relief under the [Postconviction] Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209 (2009). A petition lacks an arguable legal basis when it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16, 912 N.E.2d at 1212. A petition lacks an arguable factual basis when it is based on a fanciful factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Hodges*, 234 Ill. 2d at 16-17, 912 N.E.2d at 1212. "In considering a petition pursuant to [section 122-2.1 of the Postconviction Act], the court may examine the court file of the proceeding in which the

petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding." 725 ILCS 5/122-2.1(c) (West 2018); see also *People v. Brown*, 236 Ill. 2d 175, 184, 923 N.E.2d 748, 754 (2010). Our review of the first-stage dismissal of a postconviction petition is *de novo*. *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 20, 963 N.E.2d 394.

¶ 21　　　　　　On appeal, defendant contends he stated the gist of a constitutional claim of ineffective assistance of trial counsel based on counsel's failure to investigate relevant facts supporting an alibi defense. This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. The *Strickland* Court noted a case should be decided on the ground of lack of sufficient prejudice rather than counsel's constitutionally deficient representation if it is easier to do so. *Strickland*, 466 U.S. at 697.

¶ 22　　　　The State contends defendant did not comply with section 122-2 of the Postconviction Act's supporting document requirement in his ineffective assistance of counsel claim. In *People v. Collins*, 202 Ill. 2d 59, 62, 782 N.E.2d 195, 196 (2002), the defendant filed a *pro se* postconviction petition alleging his trial counsel failed to assist him in filing an appeal and seeking a reduction of his sentence. The defendant provided a sworn verification of his petition but did not attach any other supporting documentation. *Collins*, 202 Ill. 2d at 62, 782 N.E.2d at 196. The circuit court summarily dismissed the defendant's petition at the first stage. *Collins*, 202 Ill. 2d at 62, 782 N.E.2d at 196. On review, the supreme court found the defendant did not comply with the requirements of section 122-2 because his petition was not supported by documentation and did not explain the absence of such documentation. *Collins*, 202 Ill. 2d at 66, 782 N.E.2d at 198. The supreme court further found the defendant's failure to comply with section 122-2 justified the summary dismissal of his postconviction petition. *Collins*, 202 Ill. 2d at 66, 782 N.E.2d at 198. Additionally, as to potential alibi witness, our supreme court has found it was precluded from considering the issue where the defendant failed to submit affidavits from the potential witnesses themselves. See *People v. Thompkins*, 161 Ill. 2d 148, 163, 641 N.E.2d 371, 378 (1994).

¶ 23　　　　Defendant notes our supreme court has recognized no extrinsic evidence may be required where the allegations contained in the petition are based upon matters of record. *People v. Kitchen*, 189 Ill. 2d 424, 433, 727 N.E.2d 189, 193 (1999). "The requirement for accompanying affidavits arises from the need to furnish information *dehors* the record that the petitioner did not have available to him or her at the time of the original trial." *Kitchen*, 189 Ill. 2d at 433, 727 N.E.2d at 193. Defendant contends he did not need to attach affidavits because potential testimony by Shilo and Gray appeared in a pretrial disclosure and evidence at trial

supported his alibi.

¶ 24    The pretrial document to which defendant refers was an answer to discovery filed by defendant's first attorney, the public defender. Defendant was represented at trial by private counsel. The answer to discovery stated the following:

> "The Defendant intends to prove an alibi. The Defendant maintains that at the time of the alleged offense, he had borrowed Shilo Hale's vehicle to pick up his son from the First United Methodist Church Child Care Center. Upon picking his son up, he drove to Shilo Hale's residence, where his son resides and dropped his son off. The Defendant remained at that residence for a few minutes. The Defendant then drove to his (the Defendant's) residence at 1503 Kiler, Champaign to pick up some items. The Defendant then drove to Talecris Plasma Resources located at 24 E. Green Street in Champaign and returned Shilo Hale's vehicle. The Defendant then walked from Talecris Plasma Resources toward the bus station. Jasmine Gary picked the Defendant up while he was walking."

¶ 25    At trial, Sergeant Darr testified he interviewed Shilo and a person at her son's daycare. The State presented photographs of Shilo's and defendant's text messages on the date of the stabbing and a document from the daycare showing the child was picked up by his dad at 4 p.m. on the day at issue. Sergeant Darr also testified he interviewed Gary and established a time frame for Gary's contact with defendant after the stabbing. The first two contacts between defendant and Gary after the stabbing were by cellular telephone and the third contact was in person. Moreover, Sergeant Darr testified he interviewed Shilo's daughter and father regarding defendant's whereabouts around the time of the stabbing. He also obtained a receipt from a U-Haul dealership, which was admitted into evidence. In his closing argument, defense counsel

noted the U-Haul was turned in around 3:40 p.m. Defense counsel argued defendant was not the person who stabbed Stauffer based on what defendant was doing, such as returning the U-Haul and picking up his son. In rebuttal, the State argued no receipts or other evidence showed what defendant did between 4:11 p.m. and 6 p.m. and the 9-1-1 call for the stabbing came in at 4:49 p.m.

¶ 26    As such, the statements in the pretrial disclosure that Shilo could testify about were already presented at defendant's trial, and the trial record indicates Gary did not have contact with defendant until after the stabbing. Thus, defendant failed to make an arguable claim of prejudice under *Strickland* because the testimony of Shilo and Gary defendant alleges trial counsel could have presented would not have affected the outcome of defendant's trial. If defendant had additional information Shilo and Gary could have testified about, defendant failed to comply with section 122-2 of the Postconviction Act by not attaching affidavits by Shilo and Gary or by not stating why such affidavits could not be provided.

¶ 27    Accordingly, we find the circuit court properly dismissed defendant's postconviction petition at the first stage of the proceedings.

¶ 28                                    III. CONCLUSION

¶ 29    For the reasons stated, we affirm the Champaign County circuit court's judgment.

¶ 30    Affirmed.